423 So.2d 1116 (1982)
STATE of Louisiana
v.
Westley RAY.
No. 82-KA-0283.
Supreme Court of Louisiana.
November 29, 1982.
*1117 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., James C. McMichael, Trial Counsel, Anne Goodman, Catherine Estopinal, Asst. Dist. Attys., for plaintiff-appellee.
Timothy Fischer, Jeannette G. Garrett, Francis Baker Jack, Asst. Indigent Defender, Shreveport, for defendant-appellant.
BLANCHE, Justice.
Westley Ray was convicted by a six-person jury of one count of forgery, a violation of LSA-R.S. 14:72. Ray was then sentenced by the trial court to serve ten years at hard labor, the maximum sentence. In appealing his conviction and sentence, the defendant urges two of the four errors he assigned below.
On August 15, 1980, the defendant and another man entered the B & W Drive-in Grocery in Shreveport, Louisiana. Defendant presented to Mrs. Tidwell, wife of the proprietor, a check for $110.00 drawn on the account of Ina Dew, signed by W.E. Dew, and made out to Westley Ray. Mrs. Tidwell requested identification, and the defendant produced a drivers' license which identified him as Westley Ray. Since it was not the ordinary practice of this grocer to accept two-party personal checks, Ray explained to Mrs. Tidwell that the check actually was a payroll check from a landscaping company.[1] After the defendant endorsed the check as Westley Ray, he was paid $110.00.
The other man who had entered with the defendant then presented another check drawn on the same account, made out for $90.00 to Reginald Metcalf. Mrs. Tidwell balked at cashing this check because the man could produce no identification showing that he was Reginald Metcalf. The proprietor, Mr. Tidwell, asked the two to wait while he called Ina Dew's phone number, printed on the check, to ascertain the identity of Reginald Metcalf and to confirm the validity of the check. When he left to make the call, the defendant and the man left the store, leaving the check behind.
Three days later, the defendant was arrested while attempting to cash another of Ina Dew's checks at a liquor store. Mr. and Mrs. Tidwell viewed a live lineup and identified the defendant, Westley Ray, as the man who had cashed the check at their store.

ASSIGNMENT OF ERROR NO. 3
By this assignment, the defendant urges that the trial court erred in allowing the *1118 state to introduce into evidence an identification card belonging to Reginald Metcalf which had been in his wallet at the time of his arrest. Specifically, the defendant argues that the identification card was not listed by the state in its supplemental response to his pretrial motion for discovery. By the motion, Ray had sought a list of any and all items which were obtained from him or belonged to him at the time of his arrest.
Pursuant to an order of the trial court on the motion of the defendant, the state has an obligation to make available to the defendant an itemization of things in its control and which are: (1) favorable to the defendant and material to the issue of guilt or punishment, or (2) intended for use by the state as evidence at trial, or (3) obtained from defendant or belong to him. La.C. Cr.P. art. 718; State v. Toomer, 395 So.2d 1320 (La.1981). The duty to disclose is a continuing one. If the state, subsequent to the ordered disclosure, discovers additional evidence or decides to use a particular item as evidence, it must notify the defendant of the existence of the additional evidence or its intended use at trial. La.C.Cr.P. art. 729.3; State v. Strickland, 398 So.2d 1062 (La.1981).
On September 2, 1980, the defendant filed a motion for discovery seeking, among other things, written information from the state concerning the existence of any tangible items in its possession which were obtained from or belonged to him. On September 23, 1980, the state answered, listing, among other things, the two checks brought into the store by the defendant and the other man, one of which was the check made out to Reginald Metcalf.
At the time of defendant's arrest, the police obtained from his wallet a non-picture, armed services "meal card" which had originally been issued to one "Reginald Metcalf." This card had been stapled into the inside flap of a police case file and was not discovered by the prosecution until May 11, 1981, the day before trial. On May 12, 1981, after the trial had begun, the state notified the defendant of its intention to introduce into evidence the check made payable to Reginald Metcalf. The meal card was not included in this supplemental discovery response because the prosecutor had no intention of introducing it into evidence.
In cross-examining the investigating officer, defense counsel asked if any identification had been offered with the Metcalf check. The officer replied that there had been.[2] When asked what the item of identification had been, the officer replied, "A meal card with the name Reginald Metcalf on it." On re-direct, in response to the question posed by defense counsel, the prosecutor asked the officer about the recently discovered meal card. The officer retrieved the card from his file folder and explained that it had been taken from the defendant's wallet at the time of his arrest. The state then offered the card into evidence, obviously to further establish that it had indeed been the defendant who had cashed the forged check.
The defendant urges that the failure of the state to include the card in its supplemental discovery response impaired his ability to properly assess the strength of the state's case against him and that the introduction of the card into evidence prejudiced his case to the point where reversal of his conviction is required. We disagree. Our review of the record shows that any prejudice which may have resulted from the non-disclosure of the card was harmless.
We have previously held that where the defendant has been lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such a prejudice may constitute reversible error. State v. Strickland, supra, State v. Hatter, 350 So.2d 149 (La.1977); State v. Boothe, 310 So.2d 826 (La.1975). However, the failure *1119 of the state to comply with the discovery procedure will not automatically command reversal. Rather, we must review the record for a determination of whether any prejudice which may have resulted from the non-compliance caused the trier of fact to reach the wrong conclusion. State v. Mitchell, 412 So.2d 1042 (La.1982); State v. Davis, 399 So.2d 1168 (La.1981); State v. Strickland, supra; State v. Statum, 390 So.2d 886 (La.1980), cert. denied, 450 U.S. 969.
The evidence against the defendant was overwhelming. The most damaging evidence against the defendant had already been introduced by the time the meal card was ever mentioned. The forged check on which the defendant had been paid, and on which his name had appeared as endorser, had already been introduced. The eyewitness testimony of Mr. and Mrs. Tidwell had placed the defendant in the store with the check. Mr. and Mrs. Tidwell both picked the defendant out of a live lineup. The lineups were conducted independently of one another so that neither of the Tidwells knew which suspect the other had picked out. Each took the stand under oath and identified the defendant in court as the man for whom they had cashed the check. At trial, the witnesses had been sequestered, so when Mr. Tidwell took the stand following his wife, he had no idea that she had identified the defendant in court.
Mrs. Tidwell testified that the defendant had been in the store for approximately ten minutes and that the store had been well lighted. She explained that she had studied the defendant closely because his explanation of the check as being that of a landscaping company had piqued her interest. With the defendant's drivers' license in hand, she had carefully compared the picture with his present appearance. Mrs. Tidwell also compared the signature on the license with the endorsement on the check. They matched. Further, Mrs. Tidwell testified that she had carefully studied all of the suspects at the lineup and was certain that it was Westley Ray who had cashed the check. Likewise, Mr. Tidwell testified that he too had studied the defendant closely because he had aroused his wife's suspicions. He was certain that the man at the store and the man he had chosen out of the lineup were the defendant, Westley Ray.
The meal card did have the effect of placing the defendant at the scene of the crime. That could be its only relevance. However, even as such, the evidence was merely cumulative in light of the overwhelming eyewitness testimony placing the defendant in the store with the check. Undoubtedly, it was error for the prosecutor to omit the meal card from his supplemental discovery response and then to introduce the card into evidence at trial. We do not hold that such prosecutorial misconduct will never constitute reversible error. The inquiry, in such cases, would always be as to the degree of prejudice suffered by the defendant. Based on the evidence already before the trier of fact, we cannot hold that any prejudice which may have resulted caused the jury to reach the wrong result. Likewise, given the overwhelming amount of eyewitness evidence against the defendant, we cannot hold that the failure of the state to disclose the existence of the meal card impaired the defendant's ability to properly assess the strength of the state's case against him in preparing his defense. cf. State v. James, 396 So.2d 1281 (La.1981); State v. Statum, supra; State v. Williams, 389 So.2d 60 (La.1980); State v. Landry, 381 So.2d 462 (La.1980); State v. Strickland, supra, at 1068 (Calogero, J. concurring). For these reasons, we find that the failure of the state to disclose the existence of the meal card in its supplemental discovery response, although improper, constituted harmless error.
Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4
By this assignment, the defendant argues that the ten year sentence imposed by the trial court is excessive. Specifically, the defendant contends that the maximum sentence was not imposed pursuant to the guidelines of La.C.Cr.P. art. 894.1 and was *1120 based on improper factors and the personal prejudices of the trial judge. After reviewing the record, we must agree. Accordingly, we vacate the sentence and remand the case to the trial court.
Under La.C.Cr.P. art. 894.1, the trial judge must state the considerations taken into account and the factual basis therefor in imposing sentence. While the judge need not articulate every aggravating and mitigating circumstance, the record must adequately reflect that he considered these guidelines in particularizing the sentence to the defendant. State v. Duncan, 420 So.2d 1105 (La.1982); State v. Guiden, 399 So.2d 194 (La.1981); State v. Molinet, 393 So.2d 721 (La.1981); State v. Vaughn, 378 So.2d 905 (La.1979). The judge should indicate that he has considered not only the factors militating for incarceration, but also any factors mitigating against it. State v. Franks, 373 So.2d 1307 (La.1979); State v. Gist, 369 So.2d 1339 (La.1979); State v. Sepulvado, 367 So.2d 762 (La.1979).
Before proceeding with the sentencing in this case, the trial judge noted that he was required to consider certain factors under art. 894.1 and that "the court had considered those items." Other than this bare statement by the judge, there is no indication in the record that any of the requisite factors were taken into account. Without a record more reflective of all relevant factors, we cannot subscribe to the opinion of the trial judge that the maximum sentence is required.
The defendant in this case is no saint. Westley Ray has been arrested nineteen times in the last ten years for such crimes as battery, burglary, auto theft, robbery, and crime against nature. He has four previous convictions on a 1972 charge of receiving stolen things, a 1975 charge of simple burglary, a 1976 charge of crime against nature and a 1978 charge of burglary. However, despite the criminal propensities of Westley Ray, we still require that the guidelines of art. 894.1 be followed in the imposition of sentence. The record must reflect that mitigating as well as aggravating circumstances have been considered, even if the mitigating circumstances are minimal. State v. Duncan, supra.
We note with interest that no pre-sentence investigation had been conducted in this case. While we recognize that a pre-sentence investigation is not required by law, it is a helpful tool in imposing sentence, particularly where the law provides for a wide range of sentences for the crime in question.[3]State v. Dunns, 404 So.2d 1235, n. 1 (La.1981); cf. La.C.Cr.P. art. 875; State v. Bell, 377 So.2d 275 (La. 1979).
On remand, it may well turn out that the defendant deserves the maximum sentence, but we cannot subscribe to the sentence imposed in this case based on the record before us. Without an articulation of the factual basis therefor, a sentence may appear to have been arbitrary and excessive. It is for this reason that the factual basis underlying the sentence is required. La.C. Cr.P. art. 894.1; State v. Williams, 397 So.2d 1287 (La.1981); cf. State v. Douglas, 389 So.2d 1263 (La.1980); State v. Gambino, 362 So.2d 1107 (La.1978).
In addition, as a prelude to the imposition of sentence, the trial judge lectured the defendant on the recent rash of burglaries in the Shreveport area. The judge remarked that the "big thing" among burglars in the Shreveport area at the time was to steal checks, "and then these checks would later appear at one of the local financial institutions forged and so it is a serious problem that is facing our community, this business of having forged checks that come from burglaries." The judge tried to qualify his remarks by stating that he did not mean to suggest that the defendant was involved in the burglaries; however, he did suggest that the defendant had "[m]aybe... got together" with the burglar who had stolen the checks. The judge followed his *1121 burglary lecture by stating that, taking "all of these things together," the defendant had shown an utter disregard for the laws of society and that the defendant was in the need of correctional treatment.
As we noted in Dunns, supra, it is not improper for the judge to take into account larger sociological concerns in imposing sentence, as long as the sentence is particularized to the defendant. 404 So.2d at 1236. However, we are forced to conclude that this trial judge erred in basing the sentence in part upon the recent rash of burglaries in the Shreveport area. In our opinion, the trial judge's commentary on the burglary problem fell outside the "sociological concerns" we spoke of in Dunns, and we find unpersuasive the judge's qualification that the burglary problem did not bear on his decision to impose the maximum sentence. The judge expressly suggested that the defendant may have gotten together with the burglars who stole the checks. The judge stopped just short of accusing Westley Ray of the burglary in which Ina Dew's checks were stolen. Because there is no evidence in the record which would link the defendant to any burglaries, we find that the trial judge erred in taking these matters into consideration in imposing sentence. State v. Williams, 397 So.2d 1287, 1293 (La.1981).
At the sentencing hearing, the defendant had expressed a desire to show circumstances which mitigated against imposition of the maximum sentence. The trial judge refused to allow him to do so. We consider such a refusal to be an abrogation of the defendant's right to rebut misinformation relied upon in imposing sentence or to show mitigating factors. Since we vacate the sentence and remand the case to the trial court for re-sentencing, the defendant should be afforded the opportunity to make such a showing at that time. State v. Cox, 369 So.2d 118 (La.1979); State v. Sepulvado, supra.

DECREE
Therefore, for the foregoing reasons, the conviction of the defendant, Westley Ray, is affirmed. But because we find the record markedly devoid of any consideration of the proper sentencing factors, and because the trial judge in part based the sentence on improper factors, we must vacate the sentence and remand the case to the trial court for consideration of any factors which may mitigate against the maximum sentence, and for re-sentencing in accordance with the guidelines set forth in La.C.Cr.P. art. 894.1.
AFFIRMED; SENTENCE VACATED AND CASE REMANDED TO THE TRIAL COURT FOR RE-SENTENCING.
DENNIS, J., concurs in the result although he disagrees with the formulation of the harmless error rule. See State v. Gibson 391 So.2d 421 (La.1980.)
WATSON, J., concurs but dissents from remand for resentencing.
LEMMON, J., concurs in remanding for resentencing only because the trial judge refused to allow evidence of mitigating factors.
NOTES
[1] It was the policy of the B & W Grocery to cash only payroll checks on proper identification. On the day of the offense, August 15, the Grocery cashed several other payroll checks, but none from Ina Dew or W.E. Dew. Sometime before the offense, the business of W.E. Dew had been burglarized and one of his wife's checkbooks had been stolen. Beyond the fact that he had forged some of the stolen checks, the defendant, Westley Ray, had never been linked to or formally charged with the burglary.
[2] This testimony seems to be in error. Neither of the Tidwells testified that the identification card of Reginald Metcalf had been offered either by the defendant or the other man with him. In fact, their testimony was that no identification could be produced by the other man. Although it is not difficult to conceive of reasons why the defendant was carrying the card, we hesitate to hypothesize on the matter.
[3] The range of sentences which could be imposed for one count of forgery is quite wide. LSA-R.S. 14:72 provides for a term of incarceration ranging from zero to ten years, with or without hard labor.