436 So.2d 639 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Earnest Felton GRAY, Defendant-Appellant.
No. CR82-694.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1983.
Writ Denied October 7, 1983.
Jimmie C. Peters, Jena, for defendant-appellant.
Joseph P. Beck, II, Dist. Atty., Colfax, for plaintiff-appellee.
Before FORET, CUTRER and LABORDE, JJ.
LABORDE, Judge.
Defendant, Earnest Felton Gray, was charged by bill of information on March 25, 1982, with theft of five head of cattle, a violation of LSA-R.S. 14:67.1. He was tried by jury and found guilty as charged. The trial court sentenced him to one year at hard labor. Defendant appeals his conviction and sets forth the following two assignments of error:
(1) That defendant's motion for mistrial should have been granted because of alleged improper conduct by the state.
(2) That the state failed to prove defendant's guilt beyond a reasonable doubt.
We find no merit to either of defendant's assignments. Therefore, defendant's conviction is affirmed.
At the time of his arrest, defendant was 60 years old and made his living by transporting *640 cattle to auction for local farmers in the Grant Parish area. On January 30, 1982, he hauled six head of cattle to the Hodges' Auction Barn in Grant Parish and registered them with the Brand Commissioner under the fictitious names of Benny and T. Cotton. Hodges' Auction Barn paid defendant with two checks made out for $577.50 and $1,092.92, respectively. The payees were listed as Benny and T. Cotton.
Also present at the auction that day was Huey Sullivan, who was surprised to discover the presence of one of his missing cows. Sullivan had not authorized anyone to bring the cow to auction and immediately suspected foul play. A consultation with the Brand Inspector revealed that the cow had been brought in by defendant and was registered under the names of Benny and T. Cotton. Sullivan took the matter up with defendant who told him that he had brought the cow in at the request of two black males from LaSalle Parish whose truck had broken down. Not satisfied with defendant's story, Sullivan contacted Harold Hawthorne the next morning. He had seen some of Hawthorne's cattle at the auction and had suspected for some time that his cow had strayed into Hawthorne's herd.
Hawthorne confirmed Sullivan's suspicion that his stray had been grazing with Hawthorne's herd at Little River. However, Hawthorne said that he had not authorized anyone to take any of his cattle from that area to the auction. The cattle that he had tagged for auction were five calves he had penned up next to his house. He testified that he had instructed the defendant to come by his house and pick up the calves, but that defendant never arrived.
The two men quickly proceeded to Hawthorne's feeder pen at Little River whereupon they discovered the absence of six head of cattle; Sullivan's stray and five head belonging to Hawthorne. After observing fresh tire tracks leading to the pen, the men left for Hodges' Barn. They found two of Hawthorne's cows still at the barn but discovered that three head had already been shipped out. The missing cattle were described to the livestock inspector who tracked them down and returned them to Hawthorne. An investigation was conducted by the Hodges' Barn management which revealed that all six head of cattle taken from Hawthorne's pen had been brought in by defendant and registered under the names of Benny and T. Cotton. Hawthorne subsequently filed a complaint with the Grant Parish Sheriff's Department. The investigation which ensued revealed that two days after the auction defendant cashed the two checks made out to Benny and T. Cotton at a bank in Jena. The checks bore the endorsement of the fictitious payees. From the two checks which totaled $1,670.42, defendant applied $978.00 toward a personal note, and deposited $311.00 into his checking account. Defendant took the remaining $380.79 in cash. He was arrested five days later on February 6, 1982, one week after bringing the cattle to market. During the interim period between the sale and his arrest, the defendant did not make any effort to tender any payment to Hawthorne or Sullivan. Defendant's only statement upon arrest was, "I made a mistake and that's all I'm gonna say."
Defendant's defense at trial was that the entire matter was but a misunderstanding. He testified that Mr. Hawthorne had instructed him to take the Little River cattle to the auction and register them under a fictitious name. Mr. Hawthorne was 72 years old, defense counsel explains and obviously forgot about his instructions. Defendant admitted that he took all six cows from the Little River feeder pen but said he was unaware at the time that one of their number included Mr. Sullivan's stray. The fact that he cashed the checks and applied part of the proceeds toward a personal loan and account was not indicative of his guilt, he explained, for it was routine for him to cash the checks issued to the seller. At the time he cashed the checks made out to the fictitious Cottons he had more than enough cash in his pocket to pay off Mr. Hawthorne and therefore saw no problem with applying the checks toward his own personal interests. That he did not immediately pay *641 off Mr. Hawthorne he argued, was of no consequence, for it was common practice for him to hold the proceeds for up to a couple of weeks. He explained that his statement at the time of his arrest that he had made a mistake was in reference to registering the cattle under fictitious names. He said that he fabricated the entire story about the Cottons in order to protect Mr. Hawthorne.
Defendant first contends that the trial court erred in denying his motion for mistrial due to alleged improper conduct on the part of the district attorney. Specifically, defendant asserts (1) that the state failed to fully comply with his motion for discovery by withholding information concerning inculpatory and exculpatory statements made by defendant; (2) that the state misled the defendant by informing him that it had certain documentary evidence and, on the day of the trial, reversed itself and subpoenaed the same evidence from defendant; (3) that the state employed improper questioning techniques such that the defendant was forced to continually object to protect his interest; but by doing so, developed prejudice in the mind of the jury.
The rules of discovery, codified in LSA-C.Cr.P. art. 716 et seq., were intended to eliminate unwarranted prejudice to the defendant. State v. Toomer, 395 So.2d 1320 (La.1981). Violations of an accused's statutory rights may be sanctioned. LSA-C. Cr.P. art. 775 states in part:
"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial ..."
Failure of the state to comply with the rules of discovery does not of itself warrant reversal of the defendant's conviction, for LSA-C.Cr.P. art. 921 states:
"A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."
Consequently, the relevant inquiry in this case is whether the defendant suffered prejudice to any substantial right. An examination of the record does not indicate to us that any significant right of defendant was impaired as a result of improper conduct on the part of the state. Although the state may not have fully complied with defendant's discovery motion, defendant's objections regarding the admission into evidence of statements not included in the state's answer to the discovery motion were argued out of the presence of the jury and sustained each time. In addition, the trial judge admonished the jury on occasion not to draw any inferences regarding the excluded testimony.
We also conclude that a mistrial was not warranted by the State's failure to disclose to defendant that it did not have the cancelled checks in its possession and then subpoenaing the same from defendant's on the day of the trial.
The checks issued in payment for the stolen cattle were never at issue in this case. Defendant freely admitted that he received and cashed them. For this reason, we fail to see how defendant could have suffered any prejudice by the state's conduct.
Finally, defendant's argument that his frequent objections at trial prejudiced him in the minds of the jury is without merit. This argument, which is at most speculative, is not supported by the record. The record shows that defendant's frequent objections at trial were not a product of any bad faith or wilful impropriety on the part of the state. Therefore, a mistrial on these grounds is not warranted.
Defendant's second contention is that the facts presented by the state did not establish the elements necessary for proof beyond a reasonable doubt. More specifically, defendant maintains that the state failed to prove that he intended to permanently deprive the owners of the cattle at issue.
To successfully prosecute an accused for cattle theft, the state must prove the following *642 elements of LSA-R.S. 14:67.1 beyond a reasonable doubt:
(1) a misappropriation or taking of livestock belonging to another,
(2) either without the consent or by means of fraudulent conduct,
(3) with an intent to deprive the other permanently of the livestock.
See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). LSA-R.S. 14:67.1 adds that:
"Transportation of livestock to a slaughterhouse or an auction sale barn and assignment in a record book in a name other than that of the owner shall also be theft of livestock. An intent to deprive the owner permanently of funds derived from sale is essential."
From our review of the record, we conclude that the testimony and evidence presented by the state, especially that of Mr. Hawthorne, establishes defendant's guilt beyond a reasonable doubt. In order to accept defendant's defense that the whole matter was a "misunderstanding", we would have to disregard or reject the testimony of the state's chief witness, Mr. Hawthorne. The jury heard and evaluated the conflicting testimony of defendant and Mr. Hawthorne. Their determination that defendant intended to permanently deprive Mr. Hawthorne and Mr. Sullivan of their cattle was based upon the credibility of three witnesses. This determination is entitled to great weight. State v. Klar, 400 So.2d 610 (La.1981). Finding that the jury's decision is not clearly contrary to the evidence contained in the record, we refuse to disturb the jury's finding of guilt.
For these reasons, defendant's conviction is affirmed at his costs.
AFFIRMED.