472 So.2d 91 (1985)
STATE of Louisiana
v.
Tourlin J. MARTIN.
No. 85-KA-41.
Court of Appeal of Louisiana, Fifth Circuit.
June 3, 1985.
*92 John M. Mamoulides, Dist. Atty., John Lee, Asst. Dist. Atty., Twenty-Fourth Judicial Dist., Jefferson Parish, State of La., Gretna, for plaintiff-appellee.
Martha E. Sassone, Staff Appellate Counsel, Twenty-Fourth Judicial Dist., Indigent Defender Bd., Gretna, for defendant-appellant.
Before BOUTALL, BOWES and CURRAULT, JJ.
CURRAULT, Judge.
This appeal originates in the Twenty-Fourth Judicial District Court, Division "O", wherein Tourlin J. Martin was found guilty of simple robbery by a twelve-person jury and was subsequently sentenced to five years at hard labor. We affirm the conviction and sentence.
Around 2:00 a.m. on November 11, 1983, Richard Mack walked out of Massey's Lounge in Marrero, entered his car, which was parked in front of the lounge, and fell asleep. Around 5:00 a.m., Mack was awakened by three men who knocked on the window and told him the police would arrest him for sleeping in his car. About fifteen minutes later, two of the men began pulling on the doors of Mack's car, trying to gain entrance, telling Mack they wanted shelter from the cold. Mack got out of the car, intending to re-enter the lounge.
Realizing he had forgotten his glasses, Mack opened the door on the passenger's side and leaned into the car to retrieve them. Suddenly, Mack was pulled from the car and struck on the head with a bottle. Mack fell to the ground. As he lay there, someone leaned over and removed Mack's car keys from his coat pocket. Mack regained his balance and retrieved a nightstick from the passenger's side of his vehicle. Mack swung at two men who were attempting to enter the passenger's side of the car, succeeding in chasing them a short distance down the street. Mack then ran around the car and attempted to remove the third man (later identified as Tourlin J. Martin) from the driver's seat. As he struggled with Martin, the other two men returned and helped overpower Mack. Martin re-entered Mack's car, drove a short distance down the street, stopped momentarily to allow the other two men to get into the car, and sped off. Mack was left standing at the scene, bleeding from a cut on his head sustained when he was struck by the bottle.
The police were summoned, and Deputy Joe Lawler of the Jefferson Parish Sheriff's Office arrived at the scene at 5:30 a.m. Mack gave Deputy Lawler a description of the stolen vehicle and its license plate number. Mack also gave Deputy Lawler a list of personal effects which had been stolen, including a watch, a $200 money order, $60 in bills, and $10 in quarters. An all points bulletin was put out on the vehicle. After following Mack to the hospital and getting a complete description of the perpetrators, Deputy Lawler resumed his routine patrol.
Shortly thereafter, Deputy Lawler was notified by the dispatch operator that a clerk at a Time Saver on Bridge City Avenue had phoned in a suspicious person report. The suspect, who matched the description of one of the men who robbed Mack, had attempted to get a large amount of change converted into bills. Deputy Lawler proceeded toward Westwego and patrolled Fourth Street. Deputy Lawler observed and attempted to stop a vehicle matching the description and license number of Mack's car. The driver pulled into a parking lot, whereupon two men jumped from the vehicle and fled on foot. Deputy Lawler gave chase and apprehended Martin. *93 Deputy Lawler seized Mack's car keys and a blood stained shirt from Martin who was then arrested and taken to central lock-up.
On November 19, 1983, Detective Mike Guillory of the Jefferson Parish Sheriff's Office prepared a photographic line-up and presented it to Mack. Without hesitation, Mack identified Tourlin Martin as one of the men who robbed him.
On November 23, 1983, the Jefferson Parish District Attorney filed a bill of information charging Tourlin J. Martin with the armed robbery of Richard Mack, in violation of LSA-R.S. 14:64. The defendant was arraigned on January 12, 1984, and, represented by appointed counsel, pled not guilty to the charge. On March 12, 1984, the defendant's motion for discovery was marked satisfied; the defendant's initial motions to suppress evidence and identification were denied.
On April 10, 1984, a second motion to suppress evidence and a motion to suppress lab reports were denied. Trial commenced immediately thereafter, and a jury of twelve plus one alternate was impaneled. The following day, the jury returned a verdict of guilty of the lesser included offense of simple robbery; and on May 3, 1984, the defendant was sentenced to five years at hard labor. It is from this conviction and sentence that the defendant seeks relief on appeal.
Appellant specifies the following assignments of error:
(1) the trial court committed reversible error in denying defense counsel's motion to suppress;
(2) the trial court committed reversible error in not imposing sanctions against the state under LSA-C.Cr.P. Article 729.5; and
(3) the trial court committed reversible error in admitting into evidence S-6 and S-7 over the objection of defense counsel.
Assignment of error No. 1 was neither briefed nor argued, and accordingly is deemed abandoned. See Uniform Rules Courts of Appeal, Rule 2-12.4. See also State v. Smith, 452 So.2d 251 (La.App. 5th Cir.1984); State v. Becnel, 441 So.2d 339 (La.App. 5th Cir.1983). As the remaining two assignments (Errors 2 and 3) were joined for argument in appellant's brief, they have likewise been joined for argument in this opinion.
On February 9, 1984, defense counsel filed a discovery motion requesting among other things inspection of all physical evidence and the results of physical examinations, scientific tests and experiments made in connection with the case and intended for use at trial. At a pre-trial hearing on March 12, 1984, defense counsel was allowed to inspect the shirt seized from the defendant and a vial containing a sample cut from the shirt. The following colloquy then took place:
MR. ALTERMAN: [Defense Counsel]
There has been a sample cut from the shirt to have analysis done but the DA is unaware of whether or not that testing has been done. He doesn't have a report yet. As soon as he finds out or receives a report from any tests that were done on that sample, I would like to be given an ample notice in order to subpoena other medical records.
MR. LEE: [Assistant District Attorney]
I will do so your Honor as soon as I receive the report. Defense counsel has viewed my file and I believe we can mark the motion for discovery satisfied.
MR. ALTERMAN:
That is correct.
On the morning of trial, defense counsel re-urged his motion to suppress evidence, including results of the lab tests which he received that morning, alleging that the state had failed to comply with discovery timely, thereby putting the defense in a situation where they couldn't effectively cross-examine witnesses regarding the testing procedures nor prepare a rebuttal of the report. Defense counsel alleged it would be prejudicial and asked that the court, pursuant to LSA-C.Cr.P. Article 729.5, prohibit the state from introducing testimony concerning the lab report into evidence.
*94 In response to defense counsel's argument, the prosecutor pointed out that two weeks previously he had called defense counsel and informed him that the crime lab tests indicated that Type A blood was on the shirt seized from the defendant at the time of his arrest. Defense counsel readily admitted that this conversation took place, and at that time turned down an opportunity to have independent tests run. The prosecutor went on to state that the lab report was not complex, but simply reflected the information which had already been passed to defense counsel and that defense counsel would not be prejudiced by its use.[1] The prosecutor stated he had not received a copy of the lab report until the morning of trial.
In denying the motion to suppress, the trial judge stated:
"I think ordinarily the defense would have a good motion, and I think in this case it's not a good motion for these reasons: As I previously stated in chambers, and now relate for the record, the element of surprise here in that the defense has known for some two weeks, I think it has been presented to me by both sides, that the defense has known the contents of the report. It's true that the contents of the report, to this extent, that the report indicates that the blood was Type A, the defense has been with that knowledge, has been offered and turned down an opportunity to run their own test to counter that information, which opportunity they have chosen to not avail themselves of. And I don't think anybody, or it has been presented to me that no one is arguing against the validity of the test or that, in fact, the results of the test are incorrect. That wasn't an issue here. We might be presented with a different situation than we were.
"The reportand I want a copy Mr. ClerkI want a copy of the report which I have photographed to be attached to this motionthe report simply states that the blood is Type A. I think in the proper case, I would issue an appropriate order, but I don't think that such an order is necessary or even appropriate in this particular case."
On appeal, appellant's counsel re-urges his allegation that the defense was prejudiced by the lateness of the state's compliance with discovery orders and contends that the trial judge erred by not sanctioning the state and in allowing the admission of the shirt into evidence.
As we have already dismissed the assignment pertaining to the denial of appellant's motion to suppress, we will now consider whether or not reversible error was committed when the court chose not to impose sanctions under LSA-C.Cr.P. Article 729.5.
Chapter 5 of LSA-C.Cr.P., dealing with inspection and discovery, permits a trial judge to choose from a wide range of alternatives and sanctions and provides in pertinent part:
Art. 729.5. Failure to comply; sanctions

A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter, or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
B. In addition to the sanctions authorized in Part A hereof, if at any time prior or subsequent to final disposition the court finds that either the state through the district attorney or assistant district attorney or the defendant or his counsel has willfully failed to comply with this Chapter or with an order issued pursuant to this Chapter, such failure shall be deemed to be a constructive contempt of court.
*95 State v. Williams, 438 So.2d 1212 (La. App. 3d Cir.1983) addressed a similar issue involving an autopsy report which was completed and filed in the coroner's office. The state never had a copy of the report in its possession. At trial, the state did not introduce the report into evidence, but relied on the testimony of the deputy coroner who had done the autopsy to establish the cause of death and identify the bullet removed from the victim's body.[2] Defense counsel objected to the testimony of the deputy coroner on the grounds he had not been furnished with a copy of the autopsy report by the district attorney in response to LSA-C.Cr.P. Article 719. The trial court overruled the objection but gave defendant's counsel an opportunity to study the report before the testimony of the deputy coroner began.
Addressing the issue on appeal, the Third Circuit Court of Appeals, 438 So.2d at pp. 1215-16, stated:
"This assignment of error argues, in effect, that the State, once ordered to make discovery, has the duty to come forward with the discoverable evidence and physically supply it to the defendant. We disagree.
"LSA-C.Cr.P. art. 719 does not require the State to present an item of evidence to the defendant but instead requires that the State allow defendant access to the covered information. * * *
"The discovery articles impose no affirmative duty upon the prosecution to assemble all items requested in discovery and present them to the defense. State v. Hennigan, 404 So.2d 222 (La.1981).
"Defendant had every right and opportunity to secure a copy of the autopsy report from the moment it was filed in the Coroner's office. His attorneys admitted that no effort was made to obtain a copy of the report from that source." (Emphasis added)
In State v. Marquer, 446 So.2d 1258 (La. App. 4th Cir.1984) writs denied 450 So.2d 359; and 452 So.2d 168, on the first day of trial, before voir dire began, the state filed an amended answer to discovery, including information that three motions for subpoenas duces tecum requesting records of sales of Talwin and pyribenzamine (by other drugstores) had been filed. The prosecutor noted that as of that day, no return had been made and went on to state that defense counsel would be supplied with a copy as soon as the returns were made. Defense counsel had no objection. However, when the compilation was given to defense counsel on the third day of trial, he raised his objections. Addressing the issue on appeal, the Fourth Circuit Court, 446 So.2d at 1267, stated:
"Using the test set forth in State v. Ray [423 So.2d 1116 (La.1983)], the tardy disclosure of this compilation cannot be seen to have so prejudiced the jury as to compel it to reach the wrong conclusion. There is ample testimony of the appellants' guilt above and beyond the evidence of sales of Talwin in a pharmacy other than the one involved in this case.
"It is apparent from the trial transcript that as early as Wednesday, February 10th, appellants knew of the prosecutor's attempts to compile statistical evidence of the sale of Talwin and pyribenzamine. Motions for Subpoena Duces Tecum were in the court file as early as Monday, February 8th. Thus, appellants cannot have been completely `surprised' as to the existence of the compilation when it was given to them on Friday, February 12th.
"The state's `late' disclosure of the statistical compilation does not require reversal in this case."
Likewise, in the instant case, appellant's counsel knew in advance that the lab test had been requested, and in fact was well aware of the results. Appellant was not "surprised" as to the existence of the lab reports nor its results. The Supreme Court *96 has long held that the purpose of discovery rules as set forth by the Code of Criminal Procedure is to "eliminate unwarranted prejudice which could arise from surprise testimony." State v. Mitchell, 412 So.2d 1042, 1044 (La.1982); State v. Toomer, 395 So.2d 1320 (La.1981). See also State v. White, 430 So.2d 171 (La.App. 2d Cir.1983) writ denied 433 So.2d 1055.
Where the defendant has been lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such a prejudice may constitute reversible error. State v. Sweeney, 443 So.2d 522 (La.1983). However, the failure of the state to comply with discovery will not automatically command reversal; the defendant must show prejudice before the court will reverse his conviction. Sweeney, supra; State v. Ray, 423 So.2d 1116 (La.1983); State v. James, 396 So.2d 1281 (La.1981). The reviewing court "... must review the record for a determination of whether any prejudice which may have resulted from the non-compliance caused the trier of fact to reach the wrong conclusion." Ray, 423 So.2d at 1119. See also State v. Marquer, supra.
In the instant case, appellant has not demonstrated that he was prejudiced by the fact that he did not examine the report until the morning of trial. As in Williams, supra, the appellant had ample time to obtain evidence before trial; he had ample time to present any and all exculpatory evidence; and he had the opportunity to fully cross-examine Carol Dixon, the forensic biologist who conducted the tests on the shirt. Similar to the facts of State v. Felo, 454 So.2d 1150 (La.App. 4th Cir.1984), the defendant was notified of the substance of the lab report and was aware that blood Type A has been found on the defendant's shirt. Even the most skillful cross-examination would not have changed that fact, nor would it appear that, given adequate time to examine the report,[3] the defense might have presented opposing medical testimony. Finally, as reiterated many times, defense counsel was aware prior to trial that tests were being conducted; two weeks prior to trial, he was informed of the results; on the morning of trial, he was given a copy of the report. Testimony was not received until the following day. The defendant was not "surprised" by the testimony of Carol Dixon, nor does it appear that he was prejudiced.
This assignment is dismissed for lack of merit.
Appellant additionally alleges that the trial court committed reversible error in admitting into evidence, over objection of counsel, the blood stained shirt (S-7) of Richard Mack and a vial containing a swatch of blood stained clothing (S-6). Appellant makes no argument in brief as to S-6 and S-7, but instead simply states their admittance into evidence unduly prejudiced him and denied him a fair trial. The objection as to S-6 and S-7 was made to the relevancy of such evidence.
Relevant evidence is that tending to show the commission of the offense and the intent or intending to negate the commission of the offense and the intent. LSA-R.S. 15:441, State v. Miles, 402 So.2d 644 (La.1981). Relevant evidence should only be excluded if it would unduly arouse jury prejudice or hostility, create a collateral issue that would distract the jury, delay the trial or cause unfair surprise. State v. Brown, 395 So.2d 1301 (La.1981).
After a complete and thorough review of the evidence in this case, we cannot say such evidence created the undesired results articulated in Brown, supra. The trial court did not commit reversible error in admitting into evidence S-6 and S-7.
Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Defense counsel stated, "this whole report contains exactly four sentences."
[2] Likewise, in the instant case, the report was not introduced into evidence. A forensic biologist, Carol Dixon, with the Jefferson Parish Crime Lab testified as to the results of tests she ran on the shirt.
[3] The report contained only four sentences. Testimony was not received until the second day of trial; defense counsel cross-examined Dixon regarding testing procedures and the results of the test.