478 So.2d 1340 (1985)
STATE of Louisiana
v.
Kip LONDON.
No. 85-KA-309.
Court of Appeal of Louisiana, Fifth Circuit.
November 12, 1985.
*1341 Harry J. Morel, Jr., Dist. Atty., Kurt Sins, Gregory C. Champagne, Asst. Dist. Attys., Hahnville, for plaintiff-appellee.
Victor E. Bradley, Jr., Norco, for defendant-appellant.
Before BOUTALL, CURRAULT and DUFRESNE, JJ.
DUFRESNE, Judge.
The defendant, Kip London, was charged by bill of information with armed robbery in violation of R.S. 14:64. He entered a plea of not guilty, and after a trial by jury the defendant was found guilty as charged. The trial judge sentenced him to serve eight years at hard labor in the custody of the Department of Corrections without benefit of parole, probation or suspension of sentence. Defendant now appeals his conviction and sentence and urges five assignments of error:
1. Defense counsel was not furnished the written answers to the Prayer for Oyer and Motion for Discovery ten (10) days prior to trial as agreed upon by prosecution and defense.
2. The trial judge erred in not granting a mistrial when it was discovered that the defense had not been furnished the entire copy of the prosecution's file in accordance with their agreement.
3. The trial judge erred in not giving the defendant's special jury charge.
4. Any and all errors found in proceeding after reading of the transcript.
5. Any and all errors patent on the face of the record.

FACTS:
On October 28, 1984, Winnie Waddell, a cashier at the Charter Marketing Food Store/Service Station, observed two black males standing in the parking lot looking at a black Oldsmobile. The hood was up, and the car was backed into a parking space. The subjects stayed in the parking lot for thirty minutes, waiting for all customers to leave the store, whereupon one of the subjects, later identified as Herman Mills, entered the store and took approximately seventy dollars from Waddell at gunpoint. Waddell watched as Mills dove into the backseat of the Oldsmobile, which was moving slowly across the parking lot. The *1342 Oldsmobile turned west onto U.S. Highway 90 and headed toward Boutte.
Waddell immediately called the St. Charles Parish Sheriff's Office and provided a description of the subjects and the getaway vehicle. Deputies Bill Negrotto and Thomas Pierre were parked approximately one mile from Charter Marketing when they received the robbery broadcast. They immediately noticed that a black Oldsmobile, being driven by a black male, was turning off Highway 90 into the Gulf Station where they were parked. The suspect vehicle continued through the parking lot and turned north on La. Highway 52. The deputies followed the vehicle and stopped it a short distance down the road.
The driver, later identified as Kip London, got out of the vehicle as ordered and placed his hands on the trunk. London indicated that there was someone else in the vehicle. After several requests, Mills, who had been lying out of view on the backseat, climbed out of the vehicle. After arresting Mills and London, investigating officers recovered a .22 caliber revolver and approximately one hundred twenty-one dollars in various denominations from the vehicle. Waddell identified Mills as the gunman and London as the driver of the getaway vehicle. Mills was charged with and pled guilty to armed robbery.

Assignment of Error No. 1
Defendant contends that his defense counsel was not furnished the written answers to his Prayer for Oyer and Motion for Discovery until the day of trial and not ten (10) days prior to trial as agreed upon by the prosecution and defense counsel.
The record reflects that on November 5, 1984, defense counsel filed a Motion and Order for Discovery, a Prayer and Order for Oyer, and an Application and Order for Bill of Particulars. Following a preliminary examination, the state granted defense counsel access to its entire file, supplying copies of the incident report prepared by Deputy Negrotto, the rights form, and the defendant's statements, both oral and written. Defense counsel informed the court: "I've been supplied a copy of the report from the State which I will say at this time satisfies my Motion for Oyer and Discovery; other than if we go to trial, I'd like written motions ten days prior to trial in the Bill of Particulars."
The day before trial was set, defense counsel contacted the state and requested written answers to his motions. The state provided written answers at 3:00 p.m. that afternoon. On the morning of trial, defense counsel moved for a continuance, alleging that he did not have sufficient time to compare the written answers with the information in the documents he had previously received. The state responded that the written answers were taken from Deputy Negrotto's incident report, which defense counsel had received at the preliminary examination, and that the written answers were no different from the information contained in the report.
Defense counsel's Motion for a Continuance was denied, to which action defense counsel lodged an objection. However, after selection of the jury was completed, the trial judge recessed until the following morning in order that defense counsel might have more time to prepare. On appeal, defense counsel contends that the state's failure to comply with discovery procedures was prejudicial to the defendant in that defense counsel did not have sufficient time to review the discovery answers and prepare his defense accordingly.
Chapter 5 of the Louisiana Code of Criminal Procedure establishes guidelines for discovery and inspection. Upon motion of the defendant, the trial judge shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph or reproduce:
1. Statements by the defendant (Art. 716);
2. Defendant's prior criminal record (Art. 717);
3. Documents and tangible objects (Art. 718);
4. Reports of examinations and tests (Art. 719);
5. Confessions and inculpatory statements of co-defendants (Art. 722).
*1343 The district attorney may also be ordered to inform the defendant of the state's intent to use:
1. Evidence of other crimes (Art. 720); and
2. Hearsay statements of co-conspirators (Art. 721).
The purpose of the discovery rules is to eliminate unwarranted prejudice which could arise from surprise testimony. State v. Mitchell, 412 So.2d 1042 (La.1982); State v. White, 430 So.2d 171 (La.App. 2nd Cir. 1983) writ denied 433 So.2d 1055; State v. Martin, 472 So.2d 91 (La.App. 5th Cir. 1985). In State v. Lingle, 461 So.2d 1046, 1048 (La.1985), the court noted:
In State v. Walters, 408 So.2d 1337 (La.1982) ... [t]he court observed: "... a mainstay of concepts of fundamental fairness, due process, and the constitutional right to counsel [has been] that defendant and his attorney have the opportunity to prepare adequately for trial....' 408 So.2d 1337 at 1340. See also Jencks v. U.S., 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 103 (1957). Walters recognized the Federal Code of Criminal Procedure as the source provision for the Louisiana discovery articles. [footnote omitted]
One purpose of Louisiana's criminal discovery is to afford the defendant a chance to prepare adequately for trial and to eliminate unwarranted prejudice which could arise from surprise testimony. State v. Walters, supra; State v. Toomer, 395 So.2d 1320 (La.1981). Indeed, the object of all of our criminal laws is to achieve justice:
"The provisions of this Code are intended to provide for the just determination of criminal proceedings. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable delay." LSA-C.Cr.P. art. 2.
This assigned error is based on late disclosure of evidence pursuant to discovery requests, rather than non-disclosure. However, the Supreme Court has stated that late disclosure, as well as non-disclosure, can so prejudice a defendant that he is deprived of his constitutional right to a fair trial. State v. Williams, 448 So.2d 659 (La.1984); State v. Landry, 388 So.2d 699 (La.1980). See also State v. Martin, supra.
La.C.Cr.P. Article 729.5 provides the sanctions available for violations of the discovery articles. It states in pertinent part:
A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
A recess is one of a wide range of sanctions available if the trial judge believes that late discovery deprived a defendant of the opportunity to effectively present favorable evidence to the trier of fact. State v. Williams, supra; State v. Arnaud, 412 So.2d 1013 (La.1982); State v. Roussel, 381 So.2d 796 (La.1980).
In the instant case, after jury selection was completed, the trial judge recessed for the day in order that defense counsel might have more time to review the discovery answers. In light of the fact that the discovery answers were not voluminous, and referred extensively to Officer Negrotto's report, which defense counsel had received several months previously, the recess of one day allowed defense counsel sufficient time to thoroughly review the answers. Thus, the sanction imposed was sufficient to remedy any possible prejudicial affect resulting from the state's late compliance with discovery orders. However, defense counsel contends that a continuance should have been granted "to enable him to thoroughly review the discovery answers and prepare his defense accordingly."
Failure to comply with discovery will not command automatic reversal; a defendant *1344 must show prejudice before the court will reverse his conviction. State v. Busby, 464 So.2d 262 (La.1985); State v. Ray, 423 So.2d 1116 (La.1982); State v. Martin, supra. A reviewing court "must review the record for a determination of whether any prejudice which may have resulted from the non-compliance caused the trier of fact to reach the wrong conclusion." Ray, supra at 1119; Martin, supra.
In the instant case, the defendant has not detailed any specific prejudice resulting from the late filing of the written discovery answers. As pointed out by the state, the written answers were taken from Officer Negrotto's report and other documents. Defense counsel received copies of the documents over two months prior to trial. Defense counsel has not pointed out any inconsistencies between information in the documents and the written discovery answers which would have affected the presentation of his case before the jury, despite the fact that he has had several months since trial to review the information and prepare appellant's brief. Nor are any inconsistencies apparent upon review of the documents in question. As reiterated many times, the bulk of the written answers refer back to Negrotto's police report. In that respect, it would not appear that defense counsel was "surprised" or lulled into a misapprehension of the state's case; assuming defense counsel reviewed the documents he had previously received, he appeared at trial with full knowledge of the state's case, and therefore was not prejudiced by the late filing of discovery answers.
This assignment of error is without merit.

Assignment of Error No. 2
This assignment is related to the previous assignment but is distinguishable due to surrounding circumstances.
As reiterated earlier, the state made its entire file available to defense counsel. On the morning of trial, defense counsel questioned as to whether he had received copies of the state's entire file, noting that he did not have copies of any statements taken from the victim (Waddell). After reviewing its file, the state reported that it did not have a victim's statement. On the second day of trial, during cross-examination of Waddell, the following exchange occurred:
"Q. Did you give a written statement to any of the police concerning the crime, or statement where you gave it and they took it down and you signed it after.
A. Yes, I did.
Q. Do you know to whom you gave this?
A. No, sir."
The jury was removed and defense counsel moved for a mistrial, stating that he had been promised a copy of the state's entire file, and he had not received a copy of the victim's statement. The prosecutor countered that he had no knowledge of a written statement by the victim. The trial court denied the motion for a mistrial, but granted defense counsel access to the written statement and gave the state five minutes in which to find it.
The prosecutor contacted the St. Charles Parish Sheriff's Office and located an initial incident report, prepared by Sergeant Knoblock. It did not contain a formal statement by the victim, rather, it contained notes taken by Sergeant Knoblock during his initial interview with the victim. The prosecutor supplied defense counsel with a copy of the report, reiterating that the state had been unaware of its existence.
Defense counsel objected to the ruling of the court denying a mistrial and on appeal contends that, pursuant to La.C.Cr.P. Article 775(3), the state's failure to abide by its open discovery procedure is "a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law". As discussed in the previous assignment, a violation of discovery procedures is only reversible when a defendant is prejudiced as a result of the violation. Thus, the defendant was entitled to a mistrial under Article 775 only if he was prejudiced by a discovery violation. See State v. Gray, 436 So.2d 639 (La.App. 3rd Cir.1983).
*1345 As in assignment of error No. 1, it is not clear whether the state actually violated discovery procedures. The discovery articles require that defense counsel be provided access to items within the possession, custody or control of the state. The prosecutor contended that he was unaware of the existence of Sergeant Knoblock's report until its existence was revealed during trial. As the prosecutor had received and delivered a copy of Officer Negrotto's report to the defendant, it is possible that the prosecutor was unaware that a second report existed. If such were the case, then the prosecutor, by securing the second report and supplying defense counsel with a copy as soon as its existence was discovered, complied with La.C.Cr.P. Article 729.3.
As reiterated when discussing defendant's first assignment of error, for this court to reverse the defendant's conviction based on a discovery violation, the defendant must show that he was prejudiced by the trial court's adverse ruling on the sanction requested (i.e. a mistrial), State v. Arnaud, supra.
Defense counsel does not present specific evidence of prejudice suffered as a result of late disclosure of the existence of Sergeant Knoblock's report. Further on redirect, Waddell clarified her previous testimony stating that Knoblock made notes of her description of the suspects. Waddell did not give a signed, formal statement. Defense counsel does not contend that the report contained "surprise" evidence, nor does he contend that the report contained exculpatory evidence, such as a suspect description which did not match the defendant's physical appearance. Defense counsel had Knoblock's report available on recross examination of Waddell, but chose not to go into the subject. Nor did the state rely on any information contained solely in the report when presenting its case.
Accordingly, the defendant was not prejudiced by the late disclosure of the victim's report. This assignment of error is without merit.

Assignment of Error No. 3
Defense counsel submitted four special charges to be given to the jury. The trial judge denied one of the charges on the grounds that it was included in the general charge. Defense counsel lodged an objection and on appeal contends that the trial judge erred in not accepting the special charge, as it was a correct statement of law needing no qualification or explanation.
The charge given by the trial judge as regards direct and circumstantial evidence was as follows:
Evidence is either direct or circumstantial. Direct evidence is evidence which, if believed, proves a fact. Circumstantial or indirect evidence is evidence which, if believed, proves a fact, and from that fact you may logically and reasonably conclude that another fact exists.
You cannot find a defendant guilty solely on circumstantial evidence unless the facts proved by the evidence exclude every reasonable hypothesis of innocence.
This charge is a direct quote of the charge suggested in Louisiana Jury Instructions, Criminal-Civil, Section 3.6,[1] wherein the authority for the test of the charge is cited as follows:
The first paragraph attempts to distinguish direct evidence from circumstantial evidence. See Cleary et al, McCormick on Evidence, Section 185 West (2nd Ed. 1972); Wigmore, Law of Evidence, Section 25 Little, Brown and Company (3rd Ed.1940).
The second paragraph is taken directly from La.R.S. 15:438 and states the rule to be applied when the state's case depends on circumstantial evidence. See State v. Smith, 339 So.2d 829 (La.1976); State v. Elzie, 343 So.2d 712 (La.1977); State v. Allen, [129 La. 733] 56 So. 655 (La.1911).
In State v. Davenport, 445 So.2d 1190, 1196 (La.1984) and State v. Butler, 462 So.2d 1280, (La.App. 5th Cir.1985) challenges *1346 to this identical charge were rejected.
The charge submitted by defense counsel read as follows:
There are two methods by which facts can be established: There are direct and circumstantial evidence. Direct evidence is the evidence of certain fact bearing directly and without inference on the question at issue or the facts to be proved.
Circumstantial evidence is the evidence of certain facts, from which are to inferred the existence of other material facts, bearing upon the questions at issue or the facts to be proved. This evidence is legal and competent, and when of such a character as to exclude every reasonable hypothesis of defendant's innocence, is entitled to as much weight as direct evidence. Where a conviction is sought upon circumstantial evidence alone, it must not only be shown that the facts are true, but absolutely incompatible upon any reasonable ground with the innocence of the accused, and incapable of explanation upon any reasonable ground other than that of the guilt of the accused.
The degree of certainty must be equal to that of direct testimony, and if there is one single fact not proven to your satisfaction which is inconsistent with the defendant's guilt, this is sufficient to raise a reasonable doubt, and the jury should acquit the defendant.
It is readily apparent that the requested special charge contextually parallels the general charge given by the trial judge and hence is encompassed therein. The law provides that a requested special charge which is included in the general charge need not be given. La.C.Cr.P. Article 807; State v. Davenport, supra at 1196; State v. Necaise, 466 So.2d 660 (La.App. 5th Cir.1985).
This assignment of error has no merit.

Assignments of Error Nos. 4 and 5
In these assignments we are urged to review the transcript and record for errors patent.
There are no errors patent on the face of this record. Accordingly, these assignments have no merit.
For the foregoing reasons, the conviction and sentence of the defendant are affirmed.
AFFIRMED.
NOTES
[1] Joseph, Lamonica, and Johnson, Louisiana Jury Instructions, Criminal-Civil (1980).