562 So.2d 950 (1990)
STATE of Louisiana
v.
Glen K. WEILAND.
No. 89-KA-766.
Court of Appeal of Louisiana, Fifth Circuit.
May 16, 1990.
*951 John M. Mamoulides, Dist. Atty., Dorothy Pendergast, Asst. Dist. Atty., 24th Judicial Dist., Parish of Jefferson, Gretna, for plaintiff-appellee.
Martha E. Sassone, I.D.B., Gretna, for defendant-appellant.
Before BOWES, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
The defendant, Glen Weiland, was charged with the first degree murder of Ida Baudoin (LSA-R.S. 14:30). After a trial held in June 1986, the jury returned a verdict of guilty and the defendant was sentenced to death by electrocution.
In State v. Weiland, 505 So.2d 702 (La. 1987), the Supreme Court reversed the conviction and sentence and remanded the case for a new trial.
After arraignment and various pre-trial motions, the State amended the indictment charging the defendant with second degree murder. In May 1989, a verdict of guilty of manslaughter was returned. Weiland was sentenced to twenty-one years at hard labor.
This appeal followed and the appellant urges four assignments of error:
1. The trial court erred in denying the defendant's motion to suppress the confession and statements of the defendant.
2. Also assigned as error are any and all errors patent on the face of the record.
3. The evidence presented at trial was not sufficient to justify the verdict rendered.
4. It was reversible error for the trial court to impose an excessive sentence.
We considered the assignments of error and found them without merit. Accordingly, Weiland's conviction and sentence are affirmed.

FACTS
On the evening of October 29, 1985 the defendant, armed with a World War II bayonet, attacked Ida Baudoin and her former boy friend, Paul Sahuque, in the courtyard of the Yorktown Apartments in Harvey, Louisiana.
The defendant had been living with Ida in the Yorktown Apartments; however, she had left him on October 28, 1985, after he beat her up because of her infidelity.
On the evening of October 29, 1985, after 5:00 a.m. Ida told the defendant that she was using him to get her children back from the State who had custody of them.
Subsequently, the defendant began to drink. He then went to the manager's apartment where Dorothy Starleigh, the manager's "wife", told him that Paul was going to rent his apartment. Dorothy and Buddy, the manager, began teasing him saying that Ida was in Cheryl's apartment having sexual relations with several other men. Also the defendant smoked a joint and took some muscle relaxers which Dorothy *952 offered him while he was at Buddy's apartment. The pills wired him up.
The defendant returned to Buddy's apartment bringing a drink with him after speaking with Paul who had come by to see Ida pursuant to her request. The defendant now was feeling "loaded" and emotionally "tore up". Dorothy told him that Paul and Ida were going to rent his apartment. Dorothy then asked him to go upstairs and get Ida and Paul.
The defendant went up three times to tell Paul and Ida that Dorothy wanted to see them. Each time he spoke with Cheryl, Ida's sister, who lived upstairs in the complex.
Cheryl informed Paul and Ida that Dorothy wanted to see them; therefore, they left Cheryl's apartment headed for Buddy's apartment.
The defendant attacked them from behind as they were walking through the courtyard. First he stabbed Paul in the back puncturing his lung. Next, he chased after Ida and began stabbing her. She turned to defend herself, but the defendant continued to stab her. Paul stopped the defendant when he grabbed his arm. The two men struggled over the bayonet until Buddy stepped in between them and pulled the bayonet away from them.
The defendant ran upstairs where he knocked on Cheryl's door and told her "Your sister is over with". He then backed into a vacant apartment where he attempted to commit suicide before being apprehended.
Ida died later as a result of the stabbing; however, Paul eventually recovered.

ASSIGNMENT OF ERROR NO. 1

SUPPRESSION OF CONFESSION
Defense counsel introduced the defendant's confession into evidence. The state did not mention the confession in their opening argument nor did they introduce the confession into evidence; consequently, the issue became moot when the state did not introduce the evidence. State v. Smith, 339 So.2d 829 (La.1976); cert. denied, Smith v. Louisiana, 430 U.S. 986, 97 S.Ct. 1685, 52 L.Ed.2d 381 (1977). State v. Wilson, 432 So.2d 347 (La.App. 1st Cir. 1983).
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2

ERRORS PATENT
We have reviewed the entire record and find no errors patent. This assignment has no merit.

ASSIGNMENT OF ERROR NO. 3

SUFFICIENCY OF EVIDENCE
In evaluating the sufficiency of the evidence, the standard to be used by the appellate court is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988); State v. DiLosa, 529 So.2d 14 (La.App. 5th Cir.1988), writ denied, 538 So.2d 1010 (La.1989).
The defendant was charged with second degree murder and the jury returned the legislatively responsive verdict of manslaughter. LSA-C.Cr.P. art. 814(A)(3). A jury may return a legislatively provided responsive verdict, whether or not the evidence supports the verdict, as long as the evidence was sufficient to support a conviction of the charged offense absent a contemporary objection. State ex rel Elaire v. Blackburn, 424 So.2d 246 (La.1982). See also State v. Schrader, 518 So.2d 1024 (La. 1988).
The evidence adduced at trial established that the defendant repeatedly stabbed Ida Baudoin with a bayonet, thus killing her. Second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1. The specific intent to kill might reasonably be implied from the intentional use of a deadly weapon to produce injuries involving serious risk *953 of death. State v. Butler, 322 So.2d 189 (La.1975); State v. Smith, 520 So.2d 1252 (La.App. 5th Cir.1988). Under these facts viewing the evidence in the light most favorable to the state a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4

EXCESSIVE SENTENCE
The defendant was originally charged by grand jury indictment with first degree murder; subsequently, the state amended that charge to second degree murder. After a jury trial the defendant was convicted of manslaughter. The trial court then sentenced the defendant to twenty-one years at hard labor, the statutory maximum.
At the sentencing hearing the court noted that the defendant's attack upon the victim was vicious and atrocious. The court also concluded that the defendant had a specific intent to kill the victim which he exhibited by stabbing her seven times and the defendant intended to inflict serious and great bodily harm upon more than one person. The court indicated that a sentence less than twenty-one years at hard labor would only deprecate the seriousness of the crime committed by the defendant. The court further concluded that the jury was lenient toward the defendant in its verdict because the state proved the elements of second degree murder.
In gauging the heaviness of the sentence, some amelioratory factors should be considered including eligibility for parole. State v. Green, 418 So.2d 609 (La.1982); State v. Tyler, 524 So.2d 239 (La.App. 5th Cir.1988). Here the defendant is a first felony offender, thus his eligibility for parole consideration will commence after he has served one third of the sentence imposed. LSA-R.S. 15:574.4.
When reviewing a judge's sentencing discretion the court should consider three factors: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts. State v. Telsee, 425 So.2d 1251 (La. 1983); State v. Smith, supra.
The defendant stabbed Paul Sahuque once in the back with a bayonet seriously injuring him. He then repeatedly stabbed Ida Baudoin thus killing her. Considering those facts, the defendant's crime was cruel and heinous in nature.
At the time of the offense the defendant was a thirty-two year old who had no prior criminal record.
The maximum sentence for manslaughter has been upheld often. See State v. Smith, 520 So.2d 1252 (La.App. 5th Cir. 1988); State v. Freemen, 521 So.2d 783 (La.App. 2nd Cir.1988); and State v. Hampton, 482 So.2d 141 (La.App. 4th Cir. 1986).
The defendant's sentence is not excessive. The defendant was originally charged with first degree murder after he brutally stabbed Ida Baudoin several times with a bayonet causing her death. He additionally stabbed Paul Sahuque in the back causing him serious injury. For his actions, the defendant received a sentence of twenty-one years. The defendant, who is a first felony offender, will be eligible for parole consideration after serving seven years. Considering the wide discretion afforded the trial court in sentencing a defendant, the above cited decisions and the circumstances of this offense, we cannot conclude that the defendant's sentence is grossly out of proportion to the severity of the offense or is nothing more than a needless and purposeless imposition of pain and suffering.
This assignment has no merit.
For the above reasons, we affirm Weiland's conviction for manslaughter and his twenty-one year sentence.
AFFIRMED.