583 So.2d 825 (1991)
STATE of Louisiana
v.
Clarence GRECO.
No. 90-KA-1642.
Supreme Court of Louisiana.
June 21, 1991.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Harry F. Connick, Dist. Atty., Jack Peebles, Robin O'Bannon, New Orleans, Thomas P. Greene, Lafayette, Jeffrey A. Renshaw, New Orleans, for appellant.
Patrick F. Lee, New Orleans, for appellee.
HALL, Justice.
By bill of information filed April 21, 1989 defendant Clarence Greco, the owner of a seafood market and restaurant in New Orleans, was charged with three counts of violations of LSA-R.S. 56:327 and 325.3 in that on August 22, 1988, he (1) purchased spotted sea trout after the commercial closure; (2) purchased salt-water game fish, *826 to-wit, red drum; and (3) purchased fish from a person who did not possess a valid commercial fishing license.
Defendant filed a motion to quash on the grounds that the bill of information failed to charge an offense punishable under a valid Louisiana statute and that the statutes upon which the bill was based are unconstitutional. After a hearing, a magistrate of the Orleans Parish Criminal District Court rendered judgment declaring LSA-R.S. 56:325.3, 325.4, 327(B), and 317 unconstitutional, granting defendant's motion to quash, and dismissing all charges. The state appealed directly to the Supreme Court in accordance with La. Const. Art. 5, Section 5(D)(1). For reasons expressed in this opinion, we reverse the judgment of the trial court, overrule the motion to quash as to counts one and three with the state granted leave to amend as to count two, and remand for further proceedings.
According to the police report and bill of particulars in the record, defendant, at his place of business, purchased filets of trout on August 13, 1988 and filets of trout and red drum on August 22, 1988 from Wildlife & Fisheries agents posing as fishermen.
The record on appeal is confusing as to the precise statutes and regulations defendant is charged with violating and the number of violations with which he is charged. The confusion arises from a vague bill of particulars filed by the state in response to the defendant's motion therefor which contains handwritten notes and deletions which only add to the confusion. On remand, these matters should be clarified by the filing of a supplemental or new bill of particulars in accordance with LSA-C.Cr.P. Arts. 484 and 485, or an amended bill of information in accordance with LSA-C.Cr.P. Art. 488. In spite of the deficiencies in the record, enough information is presented for us to resolve the principal issue presented on appeal, that is, the correctness of the trial court judgment declaring the several statutes unconstitutional. The issue will be considered in the context of each of the three separate charges set forth in the bill of information and the statute under which each charge is made.
Count one charges defendant with purchasing spotted sea trout (speckled trout) after the closure of commercial fishing for spotted sea trout by rule or regulation of the Wildlife and Fisheries Commission, in violation of LSA-R.S. 56:325.3.[1] This statute establishes an annual quota for the commercial harvest of spotted sea trout and provides that when the quota has been reached or is projected to be reached, the Commission shall by public notice close the spotted sea trout fishery to all commercial fishing, which closure shall not take effect for at least 72 hours after notice to the public. The closure and notice of closure shall provide that purchase, barter, trade and sale of spotted sea trout after the closure is prohibited.
Section 325.3 was originally enacted in 1987 and was amended in 1988, effective July 17, 1988. The principal amendment was to increase the quota. The Commission *827 adopted a rule closing commercial trout fishing and prohibiting the sale of trout by emergency declaration in accordance with LSA-R.S. 49:953(B) and 49:967 of the Administrative Procedure Act, effective May 6, 1988 until midnight August 31, 1988. The emergency rule was published in the Louisiana Register on May 20, 1988 and a news release was issued by the Department on July 18, 1988.
Defendant contends that the procedure provided by LSA-R.S. 56:317[2] was not followed in the adoption of the rule and that the procedure provided by that section and the Administrative Procedure Act does not provide adequate notice. It is also argued that the rule was adopted prior to the effective date of the 1988 amendment to Section 325.3 and cannot serve as the basis for prosecution under the amended statute. Defendant points out that the alleged purchases were made only a few weeks after the amendment to the act went into effect.
The state does not contend that the Commission rule was adopted under the authority of Section 317 or that the procedures of that section were followed. Rather, the rule was adopted under the authority of Section 325.3 specifically dealing with closure of commercial trout fishing and pursuant to the procedure authorized by the Administrative Procedure Act. Section 967 of the Administrative Procedure Act specifically allows the Wildlife & Fisheries Commission to adopt rules relating to finfish seasons by the emergency procedure set forth in Section 953(B). On the record before us, it appears that the procedure was properly followed. Publication in the Louisiana Register and the news release issued by the Department amounted to adequate public notice. The amendment of the statute did not affect the validity or viability of the closure rule adopted pursuant to the statute prior to the amendment. Section 317 is not involved in this prosecution and the trial court erred in declaring it unconstitutional. It also erred in declaring Section 325.3 unconstitutional.
The second count charges defendant with purchasing salt-water game fishred drum (redfish). LSA-R.S. 56:327(A)(1)(b) provides that no person shall purchase, sell, exchange or offer for sale or exchange or possess or import with intent to sell or exchange any salt-water game fish, including red drum.[3] In spite of the fact that the defendant's alleged conduct falls squarely within the prohibition of this statute, it appears that the state, defendant, and the magistrate viewed this charge as alleging a violation of LSA-R.S. 56:325.4, which was a statute originally enacted in 1987 establishing a quota for the harvest of red drum and authorizing closure by the Commission of commercial fishing for that species. The Wildlife & Fisheries Commission adopted emergency closure rules in February and May 1988 pursuant to that section. However, LSA-R.S. 56:325.4 was repealed by Act 889 of 1988, effective July 21, 1988, and a new section 325.4 was enacted to go into effect September 1, 1991. Thus, Section 325.4 was not in effect on the date the violation was alleged to have occurred and defendant cannot be prosecuted thereunder. This statute, and the closure rule adopted thereunder, were replaced by the outright prohibition against the sale and *828 purchase of red drum contained in Section 327(A), under which defendant can be prosecuted. Under the bill of particulars as filed by the state, the motion to quash was properly sustained insofar as a prosecution under Section 325.4 is concerned, but the state should have the opportunity to amend the bill of particulars or bill of information in accordance with LSA-C.Cr.P. Arts. 484, 485 and 487. In any event, since neither the repealed Section 325.4 nor the prospective Section 325.4 was in effect at the time of the alleged violation, consideration of the constitutionality of this statute was unnecessary. The declaration of unconstitutionality by the trial court is reversed and set aside.
Count three charges defendant with purchasing fish from a person who did not possess a valid commercial fishing license, a violation of LSA-R.S. 56:327(B)[4]. Defendant contends that the statute is unconstitutionally vague. "[A] statute is unconstitutionally vague if an ordinary person of reasonable intelligence is not capable of discerning its meaning and conforming his conduct to it. State v. Powell, 515 So.2d 1085 (La.1987); State v. Broom, 439 So.2d 357 (La.1983); State v. Stilley, 416 So.2d 928 (La.1982); State v. Baron, 416 So.2d 537 (La.1982). In addition, a penal statute must provide adequate standards by which the guilt or innocence of the accused can be determined. See State v. Broom, supra; State v. Union Tank Car Co., 439 So.2d 377 (La.1983)." State v. Barthelemy, 545 So.2d 531, 532-533 (La. 1989).
The statute clearly provides that "[i]t shall be unlawful for any person, firm, or corporation, including any restaurant or retail establishment, to purchase any shrimp, oyster, fish, or other seafood from any person who does not possess a valid commercial fishing, retail, or wholesale license lawfully issued in his name or his employer's name." The conduct proscribed is not ambiguous. Any person of reasonable understanding would realize that it is unlawful to purchase seafood from someone who does not possess a valid commercial license. The challenged statute is clearly and readily understandable and provides clear standards for determining guilt or innocence of the accused. We reject defendant's argument that the statute is unconstitutionally vague.
Defendant further complains that the statute, by placing upon a purchaser the duty to inquire whether the seller is licensed, effectively shifts the burden of proof to the defendant purchaser to prove his innocence. There is no constitutional bar to requiring that a person determine or inquire whether the person selling him fish is licensed to do so. Such requirement does not shift the burden of proof to a person accused of violating the statute as contended by defendant. The state has the burden of proving every element of the offense, including the fact that the seller was unlicensed.
Defendant asserts that the statute is overbroad in making criminal the purchase of seafood from unlicensed sellers by unsuspecting purchasers. "Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally *829 be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court." (citations omitted). Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973). Overbreadth invalidation of statutes is generally inappropriate when the allegedly impermissible applications of the challenged statute affect conduct rather than speech. State v. Neal, 500 So.2d 374, 377 (La.1987), citing Broadrick, supra.
Regulation of the sale of fish is within the scope of the state's police power both to preserve the state's natural resources and as a matter of public health and safety. As applied to a commercial purchaser such as defendant, the owner of a restaurant and retail establishment, the statute is well within the limits of the state's legitimate interest and authority. That the statute might conceivably be applied to an unsuspecting non-commercial purchaser of seafood in a fact situation raising overbreadth considerations cannot avail this defendant.
Defendant finally contends that the statute denies him due process of law because it provides no opportunity for the defendant to scientifically examine and authenticate the species of fish purchased where the fish has been disposed of, as here. This argument raises a purely evidentiary matter to be dealt with at trial, and does not bear upon the constitutionality of the statute or present grounds for sustaining a motion to quash.
The trial court erred in declaring LSA-R.S. 56:327(B) unconstitutional.
For the reasons assigned, the judgment of the trial court declaring LSA-R.S. 56:325.3, 325.4, 327(B), and 317 unconstitutional is reversed. The judgment sustaining the motion to quash as to counts one and three is reversed and set aside and the motion is overruled as to those counts. As to count two, the state shall be given the opportunity to amend in accordance with LSA-C.Cr.P. Arts. 483, 484 and 487 prior to final ruling on the motion to quash and dismissal of that charge. The case is remanded to the district court for further proceedings.
Reversed and remanded.
NOTES
[1] On the date of the alleged violation, LSA-R.S. 56:325.3 provided:

"A maximum annual quota for the commercial harvest of spotted sea trout taken within Louisiana waters or landed in Louisiana is established as one million two hundred fifty thousand pounds, regardless of the harvesting method used. The department shall monitor catch statistics for spotted sea trout and shall notify the commission when it is determined that the quota has been reached or is projected to be reached. When the quota has been reached or is projected to be reached, the commission shall by public notice close the spotted sea trout fishery to all commercial fishing in Louisiana waters. The closure shall not take effect for at least seventy-two hours after notice to the public. The closure and notice of closure shall provide that the purchase, barter, trade, or sale of spotted sea trout taken from Louisiana waters after the closure is prohibited. The closure and notice of closure shall also provide that the commercial taking or landing of spotted sea trout in Louisiana, whether caught within or without the territorial waters of Louisiana, after the closure is prohibited. The closure and notice of closure shall, in addition, provide that no vessel possessing or fishing any seine net, gill net, trammel net, or hoop net shall have a spotted sea trout aboard the vessel, whether caught within or without the waters of the state. Nothing in this Section shall be deemed to prohibit the possession of fish legally taken prior to the closure order. Violation of the provisions of this Section constitutes a class five-B violation."
[2] LSA-R.S. 56:317 provides:

"Upon securing evidence that the fish in any waters of the state have been depleted through overfishing or that fishing is detrimental to the interests of the state, the secretary may himself or concurrently with any duly authorized parish game and fish commission declare a closed season on any or all species of fish found or existing in the waters or any restricted zone of the waters or may restrict fishing in the closed season in any manner deemed advisable, after the secretary has given public notice of such intention by publication three consecutive times in the official journal of each parish in which these restrictions are effective. The order shall be published one time in the official journal of each parish in which the order is to be effective, prior to its effectiveness."
[3] On the date of the alleged violation, LSA-R.S. 56:327(A)(1)(b) provided in pertinent part:

"A. (1) No person shall purchase, sell, exchange, or offer for sale or exchange, or possess or import with intent to sell or exchange any of the following fish:
(b) Any saltwater game fish, including but not limited to any sailfish (Istiopharus platypterus), blue marlin (Makaira nigricans), black marlin (Makaira indica), striped marlin (Tetrapturus spp.), white marlin (Tetrapturus albidus), or red drum (Sciaenops ocellata)...."
[4] LSA-R.S. 56:327(B) provides:

"It shall be unlawful for any person, firm, or corporation to offer to sell or to sell any shrimp, oyster, fish, or other seafood without having first obtained a valid commercial fishing, retail, or wholesale license as otherwise provided in this Subpart, or without having first obtained certification from the department that such seafood has been raised and taken in accordance with a certified aquaculture program or a valid experimental mariculture permit issued pursuant to R.S. 56:579.1. It shall be unlawful for any person, firm, or corporation, including any restaurant or retail establishment, to purchase any shrimp, oyster, fish, or other seafood from any person who does not possess a valid commercial fishing, retail, or wholesale license lawfully issued in his name or his employer's name as provided in this Subpart or possess certification from the department that such seafood has been raised and taken in accordance with a certified aquaculture program or a valid experimental mariculture permit issued pursuant to R.S. 56:579.1. The commercial fishing license required herein shall be one which authorizes the bearer to sell his catch. Such license or certification or a copy thereof shall be in the possession of the seller and conspicuously displayed at all times when transacting any sale."