583 So.2d 1160 (1991)
STATE of Louisiana
v.
Harvey KRUEUTZER.
No. 91-KA-53.
Court of Appeal of Louisiana, Fifth Circuit.
June 26, 1991.
*1161 William J. Perry, Houma, for defendant-appellant.
Dorothy A. Pendergast, Asst. Dist. Atty.; Louise Korns, of counsel, Gretna, for plaintiff-appellee.
Before KLIEBERT and GRISBAUM, JJ., and ELORA C. FINK, J. Pro Tem.
ELORA C. FINK, Judge Pro Tem.
Harvey Krueutzer appeals his conviction of the offense of criminal mischief, a violation of LSA-R.S. 14:59.[1] The issues raised are whether the defendant's actions fit the statutory definition of the offense and, if so, whether his sentence is excessive.

FACTS
At the time of his arrest Harvey Krueutzer lived next door to Deborah Margiotta in the city of Kenner, Louisiana. Their back yards were divided by a six-foot wooden fence. On May 8, 1990, Mrs. Margiotta arrived home from work around 5:30 p.m. She noticed the defendant peeking over the common fence at her as she arrived. Approximately 20 minutes later she was in her back yard setting out some potted plants to be watered by the rain. Suddenly, through the cracks between the fence boards, she saw the defendant standing in his back yard close to the fence, apparently masturbating while watching her through the gaps. She could see his pubic hair and a moving hand and he appeared to be completely nude. (She estimated that the openings between the boards are anywhere from a quarter-inch to a half-inch wide and that the patio where she stood was approximately 20 feet from the fence.)
Mrs. Margiotta, very disturbed, telephoned her husband at his job to tell him what was happening. He told her not to make allegations unless she could substantiate them and directed her to find someone to help her. Accordingly, she telephoned another neighbor, Louis Corkern, and asked him to walk past the defendant's house to verify what was happening.
Corkern, whose home was on the other side of Krueutzer's, first glanced over the wooden fence between his yard and the defendant's, but he could not see anything. Then, walking past the front of Krueutzer's house, he peered through a grating in the gate and saw Krueutzer standing nude in his back yard, in the rain, holding his penis in his right hand. Irate, Corkern opened Krueutzer's gate and said, "I can't believe what I am seeing because here you are the man's friend * * * and you are doing this to his wife." Krueutzer responded, "I didn't touch her," then, still holding his organ, backed into his garage and shut the door.
Corkern then went to Mrs. Margiotta's home and told her to call either her husband or the police. She telephoned the Kenner police, who arrested Krueutzer and charged him with obscenity (LSA-R.S. 14:106), a felony. The bill of information later was amended to the charge of criminal mischief, a misdemeanor.
According to Mr. Margiotta, Krueutzer telephoned him later that evening and told him he had been in his yard masturbating and looking through the fence at Mrs. Margiotta because her large breasts reminded him of his wife. The Margiottas testified that Krueutzer's behavior has interfered with their enjoyment of their property because both Mrs. Margiotta and their 11-year-old *1162 daughter now are reluctant to go in their back yard for fear the defendant will repeat the behavior.
In finding the defendant guilty, the trial judge gave the following oral reasons for judgment:
In connection with this case, the unrefuted testimony shows that the positive action of the defendant was to stand in his yard, in the rain no less, who was masturbating obviously, very close to the fence.
Empirically, I know I have a somewhat similar fence to that and you can see things that are close to the fence; and I have a feeling that had he not wanted her to see him, he wouldn't have gotten that close to his fence. But, I feel it was his intentthe moral language of criminal intent, Part T [sic] in Title 14, Subsection 10, of the Criminal Code of Procedure [sic].
In all events there is no question in my mind, he is guilty of criminal mischief. This lady's unrefuted testimony, she can't use the yard; she walks out in the yard and she can't look at that fence because she doesn't know what this guy is going to do; he is a wild man, as far as I am concerned.
That doesn't have anything to do with this, because what we are talking about [is]: Has he offended her right to use her yard? She never knows when this guy is going to be standing there masturbating.
I think of my own wife in that circumstance and my eleven-year-old child, if I had an eleven-year-old girl, how would she feel when she can't walk in the back yard, knowing he will be up against the fence doing it again? That is traumatic to those people.
I think it is a clear case and, although the statute wasn't intended to reach that, as a matter of fact, it does reach that.
The Court finds him guilty * * *.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error the defendant contends the court erred in finding that the actions of the defendant constituted the crime of criminal mischief as set forth under Louisiana law.
LSA-R.S. 14:59 defines the offense of criminal mischief by setting out eight different types of conduct. The following is the definition pertinent hereto:
Criminal mischief is the intentional performance of any of the following acts:
(1) Tampering with any property of another, without the consent of the owner, with the intent to interfere with the free enjoyment of any rights of anyone thereto, or with the intent to deprive anyone entitled thereto of the full use of the property; * * *.
The defendant contends that this statute applies only to physical interference with another's property through direct contact or via a third party or projectile. In addition, he contends that the evidence does not prove beyond a reasonable doubt that he had the requisite intent to commit the crime of criminal mischief as defined by the law.
We do not find a definition of "tamper" in any Louisiana cases. Accordingly, we turn to Black's Law Dictionary 1305 (5th ed. 1979), which gives the following definitions of "tamper" (among others not applicable here):
To meddle so as to alter a thing, especially to make illegal, corrupting or perverting changes; as, to tamper with a document or a text; to interfere improperly; to meddle; to busy oneself rashly; to try trifling or foolish experiments; * * * To illegally change as to tamper with the mileage reading on an odometer of a motor vehicle.
For purposes of the Criminal code, LSA-R.S. 14:2(8) states, "`Property' refers to both public and private property, movable and immovable, and corporeal and incorporeal property."
The State admits that the defendant had no physical contact with any object or person (other than himself) during this incident, but argues "tamper" has a "much broader accepted meaning"as in jury tampering, which requires no physical contact with a juror. See LSA-R.S. 14:129. *1163 The State contends the defendant's conduct interfered with the Margiottas' right to use their property, because Mrs. Margiotta and her daughter are reluctant to use their yard.
The articles of the Criminal Code cannot be extended by analogy so as to create crimes not provided for therein; however, "all of its provisions must be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." LSA-R.S. 14:3.
Doubt regarding the extent of the statutes must be decided in favor of the accused and against the state. State v. Brown, 378 So.2d 916 (La.1979). Penal provisions are interpreted strictly in favor of the defendant, who must be afforded the benefit of genuine ambiguity. State v. Bosworth, 373 So.2d 152 (La.1979).
Despite the defendant's arguments, we do not find the statute ambiguous. We conclude that "tampering with any property of another" need not be limited to a physical act of tampering or to corporeal objects. Conduct that affects intangible property rightssuch as the right to free use and enjoyment of one's back yard might be said to be criminal mischief as defined by R.S. 14:59(1), provided the conduct is committed with the necessary criminal intent.
It is the issue of intent, however, that we find to be the crux of this case. Although the defendant's conduct interfered with his neighbors' use and enjoyment of their property, we conclude the evidence was insufficient to establish that the defendant had the requisite intent.
LSA-R.S. 14:10 states criminal intent may be specific or general. Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." General criminal intent is present whenever there is specific intent and also "when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act."
LSA-R.S. 14:11 explains the applicability of these definitions:
The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions, the terms "intent" and "intentional" have reference to "general criminal intent."
If the statutory definition of the crime includes the intent to produce or accomplish some prescribed consequences, the state is required to prove specific intent. State v. Elzie, 343 So.2d 712 (La. 1977).
Where the state's case is devoid of evidence of an essential element of the charged offensee.g., intentthe defendant's conviction and sentence must be set aside. State v. Raymo, 419 So.2d 858 (La. 1982).
Criminal mischief, as defined in R.S. 14:59(1), requires proof that the perpetrator tampered with the property of another with the intent "to interfere with the free enjoyment of any rights of anyone thereto, or with the intent to deprive anyone entitled thereto of the full use of the property." Because the quoted phrase is a qualifying provision to the general term "intent," it denotes specific criminal intent. State v. Elzie, supra.
In summary, specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result. On the other hand, general intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire on his part to have accomplished such result.
State v. Elzie, supra, at 714.
What was proven at the trial was that the defendant intended Mrs. Margiotta to see him nude and masturbating. From this behavior we might infer he had a specific intent to arouse sexual desire in himself or Mrs. Margiotta or to appeal to her *1164 prurient interest; to infer that he had a specific intent to interfere with or to prevent her use of her back yard, however, goes beyond the evidence. A general criminal intent may be inferred because the prohibited resultinterference with the free enjoyment of property rights or deprivation of full use of the propertymay reasonably be expected to follow from the defendant's behavior. General criminal intent, however, is not sufficient to establish criminal mischief under paragraph (1) of R.S. 14:59; the State must prove beyond a reasonable doubt that the defendant subjectively desired that result. The evidence cannot support that finding.
While proof of intent may rest on permissible inferences from the circumstances of the transaction, mere conjecture and speculation unsupported by any such reasonable inference cannot satisfy the burden of the state to prove guilt beyond a reasonable doubt. State v. House, 325 So.2d 222 (La.1975).
Given our conclusion on this issue, it is unnecessary to address the defendant's second assignment of error.

DECREE
For the foregoing reasons, the defendant's conviction and sentence are reversed and a judgment of acquittal is entered in his favor.
REVERSED AND RENDERED.
NOTES
[1] The offense of criminal mischief is a misdemeanor. Although the proper avenue for review of a misdemeanor conviction is by writ application, as a matter of judicial economy we choose to consider the matter on its merits. See State v. Hansan, 472 So.2d 142 (La.App. 5 Cir. 1985).