607 So.2d 665 (1992)
STATE of Louisiana
v.
Theodore ANSEMAN and Cheryl Anseman.
No. 92-KA-243.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1992.
*667 John D. Rawls, Staff Appellate Counsel Twenty-fourth Judicial Dist. Court Indigent Defender Bd., Gretna, for defendant-appellant Theodore Anseman.
Denise LeBoeuf, Ginger Berrigan, Twenty-fourth Judicial Dist. Court Jefferson Parish Indigent Defender Program, Gretna, for defendant-appellant Cheryl Anseman.
John M. Mamoulides, Dist. Atty., Dorothy Pendergast, Andrea Price Janzen, Howat Peters, and Barron C. Burmaster, Asst. Dist. Attys., Twenty-fourth Judicial Dist., Parish of Jefferson Gretna, for plaintiff-appellee State of La.
Before KLIEBERT, C.J., and BOWES and GAUDIN, JJ.
KLIEBERT, Chief Judge.
On September 13, 1990, the Jefferson Parish Grand Jury returned an indictment charging the defendants, Theodore and Cheryl Anseman, each with one count of manslaughter (LSA-R.S. 14:31) and three counts of cruelty to juveniles (LSA-R.S. 14:92). The indictment stemmed from the death of 13 month-old Heather Anseman and the alleged maltreatment of three other Anseman children. The defendants pled not guilty to the charges. Shortly before trial, the state severed the cruelty counts and proceeded to trial on the manslaughter charges. The jury found the defendants guilty of manslaughter, and the trial judge sentenced each defendant to serve 21 years at hard labor, with credit for time served. This appeal followed. For the reasons hereinafter stated we affirm the conviction and sentence of both defendants.
*668 On appeal, both defendants allege the state erred in (1) charging them with an offense not validly encompassed in the manslaughter statute, (2) convicting defendants on circumstantial evidence without excluding every reasonable hypothesis of innocence beyond a reasonable doubt, (3) disallowing evidence of mental defects relative to Cheryl Anseman's defense which also denied Theodore Anseman a fundamental right to present evidence that was relevant to his defense, and (4) the sentences imposed were excessive.
Further, counsel for Theodore Anseman contends the trial court erred in admitting photographs of the dead child into evidence. Also, counsel for Cheryl Anseman contends that if LSA-R.S. 14:31 A(2)(a) encompasses felonies based upon criminal negligence, the statute is unconstitutionally vague; the trial court erred in refusing her request to change her plea from "not guilty" to "not guilty and not guilty by reason of insanity;" and, the trial court erred in prohibiting her from introducing evidence to mitigate the sentence imposed.
We first consider the defendants' contention the Louisiana manslaughter statute (LSA-R.S. 14:31) does not encompass the charges against them. In bills of particulars furnished at the request of the respective defendants, the state specified that the Ansemans were charged with manslaughter under LSA-R.S. 14:31 A(2)(a), which provides in pertinent part:
"A. Manslaughter is:
* * * * * *
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1,[1] or of any intentional misdemeanor directly affecting the person ..."
The state identified cruelty to juveniles, a violation of LSA-R.S. 14:93,[2] as the predicate felony for the manslaughter charge. At trial the prosecutor presented evidence designed to support the state's theory on the predicate felony that the Ansemans, in the treatment of their children, were culpable of criminal negligence amounting to the offense of cruelty to juveniles.
Counsel for the defendants urged the trial court and now urges this Court to interpret LSA-R.S. 14:31 A(2)(a) as excluding from the manslaughter statute's coverage any death which occurs during the commission of a felony involving criminal negligence by the offender, as opposed to an intentional felony offense because, according to the defendants, such deaths are encompassed within the Louisiana negligent homicide statute, LSA-R.S. 14:32.[3]
Under the well-established law of Louisiana, the provisions of criminal statutes "shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." LSA-R.S. 14:3. Doubt concerning the extent of a criminal statute's coverage must be resolved in the accused's favor. State v. Brown, 378 So.2d 916 (La.1979); State v. Krueutzer, 583 So.2d 1160 (5th Cir.1991). Penal statutes are strictly construed against the state and in favor of the defendant, who is entitled to the benefit of any genuine ambiguity. State v. Russland Enterprises, 555 So.2d 1365 (La.1990); State v. Krueutzer, supra.
The Louisiana manslaughter statute is not ambiguous, and the provisions of that statute refute the interpretation here urged by the defendants. LSA-R.S. 14:31 A(2)(a) classifies as manslaughter any homicide committed, without the intention *669 of causing death or great bodily harm, while engaged in the perpetration or attempted perpetration of any felony not specified in the first and second degree murder statutes or of any intentional misdemeanor directly affecting the person. By its own terms, this section of the manslaughter statute draws a distinction between intentional misdemeanors and misdemeanors committed through criminal negligence. However, the statute makes it clear that the same distinction does not apply when a felony serves as the predicate for the manslaughter charge. Any felony, whether committed intentionally or through criminal negligence, may serve as a predicate offense for manslaughter under LSA-R.S. 14:31 A(2)(a). Therefore, the offense of cruelty to juveniles under LSA-R.S. 14:93 A formed a proper predicate felony for the manslaughter charges against the defendants in this case. See State v. Lloyd, 535 So.2d 885 (2nd Cir. 1988), reversed in part, 538 So.2d 584 (La. 1989); State v. Bolden, 501 So.2d 942 (2nd Cir.1987).
As an extension of the argument, counsel for defendant Cheryl Anseman also contends that LSA-R.S. 14:31 A(2)(a) is unconstitutionally vague if it allows a felony committed through criminal negligence to serve as the predicate for a manslaughter charge. She urges that manslaughter, when based on a criminal negligence felony, is indistinguishable from negligent homicide under LSA-R.S. 14:32.
In Louisiana, a statute is unconstitutionally vague if an ordinary person of reasonable intelligence is not capable of discerning its meaning and conforming his conduct to it. State v. Greco, 583 So.2d 825 (La.1991); State v. Barthelemy, 545 So.2d 531 (La.1989); State v. Wilson, 588 So.2d 733 (5th Cir.1991), Additionally, a penal statute must provide adequate standards by which the guilt or innocence of the accused can be determined. State v. Greco, supra; State v. Broom, 439 So.2d 357 (La.1983).
LSA-R.S. 14:31 A(2)(a) clearly defines one form of manslaughter as a "homicide committed, without any intent to cause death or great bodily harm ... [w]hen the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1. [First and second degree murder statutes] ..." The conduct proscribed is not ambiguous, and any person of reasonable intelligence is able to understand the meaning of that provision.
A crime is that conduct defined as criminal in the Louisiana Criminal Code, or in other acts of the legislature, or in the state constitution. LSA-R.S. 14:7. The determination and definition of acts which are punishable as crimes are purely legislative functions. State v. Rodriguez, 379 So.2d 1084 (La.1980).
The Louisiana legislature has exercised its authority and has defined, as separate offenses, the crimes of felony-manslaughter [LSA-R.S. 14:31 A(2)(a) ] and negligent homicide (LSA-R.S. 14:32). The provisions defining each of those crimes are unambiguous. Felony-manslaughter and negligent homicide may bear certain similarities to each other. However, the state legislature has expressed its intention to classify felony-manslaughter, without regard to the nature of the predicate felony, as a more serious crime than negligent homicide. Interpreting LSA-R.S. 14:31 A(2)(a) as implicitly excluding as predicate felonies those committed through criminal negligence is legally unsound in view of the legislature's intent. State v. Brown, 378 So.2d 916 (La. 1979). The clear language of the challenged statute refutes the defendant's claim that R.S. 14:31 A(2)(a) is unconstitutionally vague. State v. Greco, supra.
Defendant Cheryl Anseman entered a plea of not guilty at her arraignment on September 28, 1990. Upon completion of jury selection in the case, but prior to the jury being sworn, she moved to withdraw her previous plea and enter a plea of not guilty and not guilty by reason of insanity. The trial court denied that motion.
Article 561 of the Louisiana Code of Criminal Procedure allows a defendant to withdraw a plea of "not guilty" and enter a plea of "not guilty and not guilty by reason *670 of insanity" within 10 days after arraignment. Thereafter, the court may authorize such a change of plea upon a showing of good cause at any time before the commencement of the trial. "A jury trial commences when the first prospective juror is called for examination." La.C.Cr.P. art. 761. In the present case, the defendant's motion to change her plea was untimely because trial had already commenced with the calling of the first prospective jurors for examination. The denial of the motion was therefore clearly correct. State v. Fisher, 380 So.2d 1340 (La. 1980). Moreover, on appeal, Cheryl Anseman concedes that based on existing law the trial court properly denied her motion to change her plea. However, she asserts this error assignment to preserve her future appellate rights on the issue.
Next, defendants contend the trial court misapplied La.C.Cr.P. art. 651 and thus committed reversible error by excluding certain evidence.[4] During trial, counsel for Cheryl Anseman attempted to introduce evidence relating to her client's alleged mental condition at the time of Heather's death. In particular, defense counsel wished to call Phyllis Campo and Mark Zimmerman, Ph.D. as expert witnesses. The testimony of Ms. Campo, as an expert in social work and psychological counseling, was to be offered to prove that Cheryl Anseman was suffering from depression when Heather died and that this depression resulted in Cheryl Anseman experiencing the psychological phenomenon of denial which allegedly caused her to lose touch with reality. Defense counsel intended to question Dr. Zimmerman, a clinical psychologist, about the results of his evaluation of Cheryl Anseman. The trial court sustained the state's objection and ruled that the proffered evidence was inadmissible under La.C.Cr.P. art. 651 because Cheryl Anseman had not tendered an insanity plea.[5]
Cheryl Anseman contends the ruling was in error because, absent an insanity plea, La.C.Cr.P. Art. 651 only precludes the admission of evidence relating to mental defects having an organic cause, such as retardation or brain damage. Article 651 does not prohibit the introduction of evidence of a defendant's psychological and emotional condition as long as there is not an organic source of the condition. She urges therefore that the trial court improperly applied Article 651 and excluded admissible evidence of her mental condition at the time of Heather's death. Defendant Theodore Anseman contends that the exclusion of this evidence also prevented him from presenting his defense that he acted reasonably in relying on Cheryl Anseman's assurances, as a mother, that the children were being properly attended, despite her mental condition.
The Louisiana Supreme Court and this Court have previously rejected the interpretation of La.C.Cr.P. art. 651 here urged by the defendants. State v. Lecompte, 371 So.2d 239 (La.1978); State v. Leatherwood, 411 So.2d 29 (La.1982); State v. Necaise, 466 So.2d 660 (5th Cir.1985). Neither the language of Article 651 nor the foregoing cases interpreting that article distinguish between an organically caused mental condition and a psychologically or emotionally induced mental condition. Evidence of a mental condition allegedly affecting a defendant at the time of an offense, regardless of the nature of that mental condition, is inadmissible unless the defendant had properly entered a plea of "not guilty and not guilty by reason of insanity." The trial judge in this case therefore correctly excluded the testimony of Phyllis Campo and *671 Dr. Mark Zimmerman[6] without any interference to either defendant's right to present a defense. La.C.Cr.P. art. 651; State v. Wade, 375 So.2d 97 (La.1979); cert. denied 445 U.S. 971, 100 S.Ct. 1665, 64 L.Ed.2d 249 (1980).
Furthermore, Theodore has a duty independent from Cheryl's in properly looking after his children. Although a socalled division of labor may exist between a husband and wife concerning which parent supports the family and which parent cares for the children, there can be no instance where the breadwinner is relieved from his duty to see that the children are properly cared for. This duty includes seeking appropriate medical care when a child appears in need of same. Thus, Theodore's claim that the trial court's evidentiary ruling prevented him from presenting a defense is without merit.
Both defendants challenge the state's evidence as being legally insufficient to support their convictions and, since the evidence submitted was largely circumstantial, they contend the state was required, but failed, to exclude every reasonable hypothesis of innocence.
An appellate court called upon to evaluate the sufficiency of the evidence to support a conviction must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, (1979) 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986); State v. Honore, 564 So.2d 345 (5th Cir.1990).
When the state offers circumstantial evidence to prove an offense, LSA-R.S. 15:438 provides: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This circumstantial evidence rule does not constitute a purely separate test from the Jackson standard to be applied whenever a conviction results from circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985). Although it does not establish a stricter standard of review than the Jackson formula, LSA-R.S. 15:438 emphasizes the need for careful observance of the usual standard and provides a helpful procedure for the application of that standard in cases which hinge on the evaluation of circumstantial evidence. State v. Captville, 448 So.2d 676 (La.1984). All evidence, both direct and circumstantial, ultimately must be sufficient under Jackson to satisfy a rational factfinder of the defendant's guilt beyond a reasonable doubt. State v. Porretto, supra; State v. Songy, 588 So.2d 184 (5th Cir.1991). Simply because the state relied on circumstantial evidence does not mandate an acquittal. In assuming every fact proved that the circumstantial evidence tends to prove, every reasonable hypothesis of innocence must be excluded to support a conviction. We agree with the jury that the state met this burden.
The trial testimony established the Anseman children were poorly cared for. The flea-infested apartment where they lived had dog hair throughout, feces smeared on the walls, smelled of urine and had trash and dirty dishes accumulated in the kitchen. Although food was found in the apartment, Heather's flea-bitten body appeared malnourished and, according to Dr. Fraser MacKenzie who performed the autopsy on Heather, her death was the result of wasting and nutritional deprivation. Dr. MacKenzie testified Heather's weight when she died was less than at birth. He explained "wasting" as a condition in which the subject's muscular development is below the standard for an individual of the particular age (13 months old). Nutritional deprivation, according to Dr. MacKenzie's testimony, occurs in two wayseither the food intake is insufficient and starvation results; or the food intake is sufficient but the body does not properly metabolize the food. Testing to determine which of the two *672 forms of nutritional deprivation occurred is impossible when the subject is dead. However, after evaluating the autopsy results and the circumstances surrounding Heather's death, Dr. MacKenzie classified this death as a homicide.
The state also presented evidence that defendants were aware of Heather's life threatening predicament. Witnesses testified that in August of 1989, Cheryl was approved for WIC[7] assistance to cover herself and Heather, but she failed to show up for follow-on visits after her initial food vouchers were exhausted. She was ultimately dropped from the program although remaining fully eligible for assistance.
Further, the four younger children, including Heather, were taken by a neighbor who was babysitting the children to the hospital because of their very thin condition and poor personal hygiene. Before being discharged in October of 1989, the Child Protection Agency was notified of the children's condition and a caseworker assigned to the Ansemans.
Monica Martin, a friend of the defendants, testified that she visited the Anseman residence several times from January, 1990 until the week before Heather died. She related that the Anseman children always appeared to be dirty. In particular, Heather looked malnourished to Ms. Martin. About two weeks prior to Heather's death, Ms. Martin noticed what she believed to be a breathing problem in Heather. The child also had a severe diaper rash. Shortly thereafter, Theodore Anseman told Ms. Martin that he was worried that Heather might die. According to Ms. Martin's testimony, she went to discuss the problem with the defendants and found that Heather was too weak to eat. Ms. Martin further told the jury that she offered to take Heather to a doctor on four or five occasions, but the defendants refused her offers.
Then, shortly after 8:00 P.M. on August 4, 1990, Officer Nick Huth of the Kenner Police Department responded to an emergency call from the Anseman residence. He entered the residence and found Cheryl Anseman in a frantic state, holding thirteen month-old Heather Anseman, the youngest of the five Anseman children. She appeared lifeless to Officer Huth. The child's body was emaciated, her skin was cold to the touch, and Officer Huth could not detect a pulse. He noted the strong odor of urine in the Anseman residence and also that the pajamas on Heather were covered with what appeared to be dog hair. Paramedics, who arrived shortly after Officer Huth, were also unable to find any sign of life in the child. Heather was rushed by ambulance to a nearby hospital where she was officially pronounced dead.
Heather's death and the conditions at the Anseman residence were immediately reported to authorities. Officer Rodney Roy of the Kenner Police Department and Mark Goldman of the Jefferson Parish Coroner's Office met Officer Huth at the hospital and asked Cheryl Anseman to describe the circumstances surrounding Heather's death. Cheryl told the officers that Heather seemed normal when she laid the child in bed at 2:00 P.M. that day. However, when she checked Heather at 8:00 P.M. that evening, the child was not breathing and Cheryl called for emergency assistance. Cheryl also told the officers that, at the time of her death, Heather had a problem gaining weight and was scheduled to be seen by a doctor for that condition. However, Cheryl had made numerous arrangements to bring Heather to the doctor beginning some four months prior to her death and had consistently failed to do so.
Theodore Anseman, Heather's father, was not at home when the child's death was discovered. He was at a skating rink with the oldest of the Anseman children, 5 year-old Theodore, Jr., also known as Rocky. After a neighbor contacted him at the skating rink and reported the incident, Theodore Anseman went to his mother's house and left Rocky. He then drove to the hospital where officers interviewed *673 him. Theodore also stated that Heather suffered from a medical condition which prevented her from gaining weight. Although several people offered to transport the Anseman children for medical treatment, the defendants consistently refused those offers. Accordingly, there is ample evidence in the record to show the parents were well aware of Heather's condition, but did nothing to help her.
Pictures of Heather taken shortly after her death and introduced into evidence, over defense objection, clearly showed the extent of the wasting and nutritional deprivation suffered by Heather. The pictures buttressed the other evidence presented concerning the defendants' obvious knowledge of the child's condition and their complete failure to take any action. Defendant Theodore Anseman argues these photographs were prejudicially gruesome and, hence, should not have been admitted into evidence.
Article 403 of the Louisiana Code of Evidence provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." As it applies to allegedly gruesome photographic evidence, Article 403 codifies the well settled test for determining admissibility: whether the probative value of the photograph outweighs its prejudicial effect on the jury. State v. Richard, 525 So.2d 1097, 1101 (5th Cir.1988), writ denied, 538 So.2d 609 (La.1989). The evidence must be relevant to an issue in the case, and the balance must favor the evidentiary value of the photograph over its tendency to overwhelm reason and to associate the accused with the offense without sufficient evidence. State v. Moore, 498 So.2d 82 (5th Cir.1986).
The photographs here challenged graphically depict 13-month-old Heather Anseman a brief time after she died. However, these photographs are relevant to and probative of important issues in this case. Reference to the photographs afforded the jury the opportunity to evaluate defendant Theodore Anseman's defense that he relied on Cheryl to care for the children and that he saw nothing which alarmed him about Heather's condition prior to her death. The photographs also corroborated the coroner's testimony concerning the nutritional deprivation and wasting he observed in the victim. Finally, the photographs illustrated the poor state of hygiene which the defendants maintained for their young daughter. The probative value of this photographic evidence thus outweighed the possible prejudicial effect on the jury. State v. Richard, supra.
After hearing the evidence, the jury disagreed with the defendants and found the circumstantial evidence presented by the state sufficient to prove manslaughter. The credibility of the witnesses was a deciding factor in the jury's factual finding that the defendants' treatment of their children constituted cruelty to juveniles, the predicate felony for the manslaughter offense in this case. In criminal matters, the court of appeal does not function to evaluate the credibility of witnesses and overturn a jury on its factual determination of guilt. State v. Richardson, 425 So.2d 1228 (5th Cir.1983). Therefore, the defendants' contention that the circumstantial evidence presented failed to exclude every reasonable hypothesis of innocence is without merit.
When the defendants appeared for sentencing, counsel for Cheryl Anseman requested leave to call Phyllis Campo and Mark Zimmerman, Ph.D.[8] as witnesses prior to the imposition of sentence. According to counsel, the testimony of these witnesses was necessary to establish certain mitigating factors allegedly applicable in the sentencing of Cheryl Anseman. The trial court denied the request and proceeded with sentencing. Cheryl Anseman urges that the trial court erred in that ruling.
*674 Since the defendants were sentenced prior to the effective date[9] of the new sentencing guidelines promulgated by the Louisiana Sentencing Commission, the guidelines applicable to this case are those embodied in La.C.Cr.P. art. 894.1 as it existed at the time of the sentencing hearing. Section B of that article lists a series of mitigating factors for consideration in formulating a sentence tailored to the offender and the offense. The record in this case reflects that the judge carefully considered and found none of those mitigating factors applicable to this case.
The record further reveals that the evidence in mitigation offered on behalf of Cheryl Anseman was thoughtfully analyzed by the trial judge. Prior to the sentencing hearing, counsel for Cheryl Anseman filed a memorandum which incorporated the psychological findings of Ms. Campo and Dr. Zimmerman regarding Cheryl Anseman. A copy of Dr. Zimmerman's written evaluation of Cheryl Anseman was also attached to that memorandum. The transcript of Cheryl Anseman's sentencing demonstrates that the trial judge carefully evaluated those psychological findings. In stating his reasons for the sentence imposed, the judge referred extensively to the conclusions reached by Dr. Zimmerman after an examination of Cheryl Anseman.
In arguing this assignment of error, the defendants primarily rely on State v. Ray, 423 So.2d 1116 (La.1982), where the Louisiana Supreme Court vacated the defendant's sentence and remanded the case for resentencing after finding that the trial judge had failed to adequately consider the La.C.Cr.P. Art. 894.1 guidelines. However, that reliance is misplaced. While Ray recognizes a defendant's right "to rebut misinformation relied upon in imposing sentence or to show mitigating factors,"[10] the record is completely devoid of any indication that this right was abrogated in the present case. To the contrary, the information relied on by the trial judge in formulating sentence was accurate. Nor does the defendant allege any inaccuracy in the sentencing information. The trial judge was meticulous in his adherence to the guidelines of La.C.Cr.P. art. 894.1, particularly in his consideration of the mitigating factors asserted by defendant Cheryl Anseman. State v. Delaneuville, 545 So.2d 659 (5th Cir.1989).
The trial judge sentenced each of the defendants to 21 years at hard labor, the maximum sentence available under the manslaughter statute. LSA-R.S. 14:31 B. The defendants claim that their sentences are illegally excessive.
Excessive punishment is prohibited by Article 1, Section 20 of the Louisiana Constitution. Although trial judges are granted great discretion in imposing sentences, under certain circumstances, even a sentence which is within statutory limits may be considered excessive. A sentence which is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering may be set aside as unconstitutionally excessive. State v. Robicheaux, 412 So.2d 1313 (La.1982); State v. Accardo, 466 So.2d 549 (5th Cir.1985), writ denied, 468 So.2d 1204 (La.1985).
The trial judge exercises wide discretion in imposing sentences within the statutory limits, and sentences will not be set aside as excessive absent manifest abuse of that broad discretion. State v. Lanclos, 419 So.2d 475 (La.1982).
Maximum sentences are reserved for cases involving the most serious violations of the charged offense and for the worst kind of offender. State v. Quebedeaux, 424 So.2d 1009 (La.1982). As noted in the previous assignment of error, the trial judge adequately complied with La. C.Cr.P. art. 894.1 in sentencing these defendants. Once such compliance is found, *675 the function of the appellate court is to determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case. State v. Smith, 520 So.2d 1252 (5th Cir. 1988), writ denied, 523 So.2d 1320 (La. 1988).
Considering the facts of this case, the imposition of the maximum sentence for manslaughter on these defendants is not excessive punishment. Heather Anseman, a 13-month-old helpless child, died at the hands of her own parents. The defendants had every opportunity to prevent this senseless death. Family friends and government agencies offered needed assistance to the Ansemans. Cheryl and Theodore Anseman chose to ignore those offers of assistance, despite the ever worsening physical condition of Heather prior to her death. During trial, the coroner explained that Heather's death occurred when her body had deteriorated to the point that it could no longer sustain life. The action and inaction of the defendants, as parents of this young victim, are inexcusable. The offense committed by these defendants was particularly cruel and heinous, and therefore warrants imposition of the maximum sentence for manslaughter. State v. Weiland, 562 So.2d 950 (5th Cir.1990).
This assignment lacks merit.
We have also reviewed the voluminous record in this case for errors patent and find none.
For the foregoing reasons, the conviction and sentence of both defendants, Theodore and Cheryl Anseman, are affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 14:30 (first degree murder) and LSA-R.S. 14:30.1 (second degree murder).
[2] LSA-R.S. 14:93 A provides:

"Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense."
[3] LSA-R.S. 14:32 provides in pertinent part as follows:

".... Negligent homicide is the killing of a human being by criminal negligence."
[4] As it applies to this case, Article 651 of the Louisiana Code of Criminal Procedure provides that "[w]hen a defendant is tried upon a plea of `not guilty', evidence of insanity or mental defect at the time of the offense shall not be admissible." (Emphasis added)
[5] During jury voir dire, the trial court also ruled that evidence of Cheryl Anseman's mental state was inadmissible under Article 651. Defense counsel's writ applications on this ruling were denied by this Court (No. 91-KA-357) and by the Louisiana Supreme Court (No. 91-KK-1109). These writ denials do not bar reconsideration of the issue on appeal. State v. Fontenot, 550 So.2d 179 (La.1989).
[6] The trial judge did admit the testimony of Dr. Casteix, the family physician who diagnosed Cheryl Anseman as being depressed and treated her medically for that condition. The jury was therefore aware that Cheryl Anseman suffered from depression.
[7] WIC, the abbreviation for Women, Infants and Children, is a government funded program to provide low-income mothers and their young children (up to age 12 months) with necessary health care services and food.
[8] Ms. Campo and Dr. Zimmerman are the same two witnesses who were excluded from testifying at trial.
[9] The new sentencing guidelines became effective on January 1, 1991. La. Acts 1991, No. 22, Sec. 2.
[10] 423 So.2d at 1121.